(76 App. Div. 143.)

PEOPLE ex rel. GROUT, Comptroller, v. STILLINGS et al.

(Supreme Court, Appellate Division, First Department. November 21, 1902.)

1. CERTIORARI—APPLICATION—JUDGE AT CHAMBERS.
    Code Civ. Proc. § 2127, provides that the writ of certiorari may be granted at the appellate division or at special term, and section 770 provides that in the First district motions that elsewhere must be made in court may be made to a judge out of court, except motions for a new trial on the merits. *Held*, that in the First district an application for certiorari may be made to a judge at chambers.
2. SAME—ENTRY ON MINUTES.
    Where a writ of certiorari is allowed by a judge at chambers in the First district, it is the act of the court, and should be entered on the minutes by the clerk.
3. SAME—FAILURE TO ENTER—EFFECT.
    Failure to enter allowance of a writ of certiorari on the minutes of the court does not invalidate the writ.
4. STREETS—CHANGE OF GRADE—CLAIM FOR DAMAGES—LIMITATIONS—VALIDITY.
    The provision of Laws 1894, c. 567, limiting the time in which claims for damages from the change of grade of a street may be made, is not invalid, since the property owner had no remedy at common law.
5. SAME—WHEN BEGIN TO RUN.
    Laws 1893, c. 537, § 2, provided claims for damages for the change of grade of a street should be filed within six months after the first public meeting of the commissioners thereunder. Act 1894, c. 567, amended the act of 1893, re-enacting all its provisions, with additional ones. The clause relative to the time for filing claims was re-enacted. The act of 1893 limited the claims to those from changes of grade made under Laws 1887, c. 721, while the act of 1894 extended the claims to damages from changes under various other statutes. The act of 1894 authorized claims for future damages, which the act of 1893 did not. The act of 1893 provided the evidence should be submitted within one year; the act of 1894 made it four years. *Held*, that it was evidently the legislative intent to authorize the filing of new claims after the act of 1894, and where there had been meetings of the commissioners

---

¶ 1. See Certiorari, vol. 9, Cent. Dig. § 101.

before the act of 1894, which meetings were continued under the latter act, limitations did not run against the filing of a claim from the first meeting under the act of 1893, but ran from the first meeting held pursuant to the act of 1894.

Van Brunt, P. J., dissenting.

Certiorari by the people, on the relation of Edward M. Grout, as comptroller of the city of New York, against William E. Stillings and others, as commissioners, etc., and Nelson Smith, Jr., claimant, to review an award of damages to land by reason of the change of grade of a street. Award confirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Robert C. Beatty, for relator.

Nelson Smith, for respondents.

LAUGHLIN, J. The writ of certiorari was issued to review an award made to Nelson Smith, Jr., by commissioners appointed under chapter 537 of the Laws of 1893 and chapter 567 of the Laws of 1894. The claimant is the owner of premises fronting on the easterly side of Brook avenue between 161st and 162d streets, and known as "Block No. 1,348," and "Ward Nos. 3 and 24." The damages were caused by the elevation of the grade of Brook avenue in front of these premises. We are not asked to review any question with respect to the admission or rejection of evidence.

The first question to be considered relates to the validity of the writ. The respondents claim that it is void, because not issued by the court. Code Civ. Proc. § 2127, provides that the writ of certiorari must be granted at the appellate division or at special term; but in the First district it is provided that motions that elsewhere must be made in court may be made to a judge out of court, except motions for new trials on the merits. Id. § 770. The writ does not expressly show on its face that it was granted at special term, but the clerk certifies that it was issued "by the court," and it is indorsed as allowed by one of the justices of the supreme court. We think the application for the writ in the First judicial district might be made to a judge at chambers; but it is the act of the court nevertheless, and it should be entered in the minutes of the clerk. The failure to make such entry, however, would not invalidate the writ.

The only question which the relator presents relates to the jurisdiction of the commissioners to act upon this claim, his contention being that the claim was not filed within the time required by law. The claimants were without a remedy at common law. Heiser v. Mayor, etc., 104 N. Y. 68, 9 N. E. 866; People v. Lord, 24 App. Div. 137, 48 N. Y. Supp. 1065; Id., 155 N. Y. 661, 49 N. E. 1102. It was, therefore, competent for the legislature, in authorizing the recovery of damages, to prescribe a limitation of time within which claims should be filed. Reining v. City of Buffalo, 102 N. Y. 308, 6 N. E. 792; Curry v. City of Buffalo, 135 N. Y. 366, 32 N. E. 80. Section 2 of the act of 1893 required that claims for such damages should be filed with the comptroller, and a duplicate thereof with the corporation counsel, "within six months after the first public

meeting of the commissioners appointed thereunder." The first public meeting of the commissioners appointed under that act was held on the 7th day of June, 1893. The claim was not filed with the comptroller and corporation counsel until the 18th day of December, 1894. It was too late, therefore, if the act of 1893 governs. The act of 1894 took effect on the 9th day of May, 1894. It was in form an amendment of the act of 1893, and re-enacted all of its provisions, with additional provisions incorporated therein. The clause relating to the time of filing claims was re-enacted without change. The commissioners published a notice dated September 2, 1893, in the City Record, pursuant to the requirements of the statute, stating that they would hold regular meetings three times a week on the days and at the hour and place specified "until further notice." At the time the act of 1894 became of force, the commissioners were holding regular sessions pursuant to this notice, which was republished from time to time in the City Record. Such sessions were held on the 9th, 11th, 14th, 16th, 21st, 25th, and 29th days of May and the 1st and 11th days of June, 1894. The commissioners were reappointed by the mayor, under the act of 1894, on the 8th day of June, 1894, and on the 15th of the same month new oaths of office, which they had taken, were filed with the county clerk. On the last-mentioned day they caused a notice signed by them, dated June 13, 1894, to be published in the City Record, that, "pursuant to the provisions of chapter 567 of the Laws of 1894, entitled [quoting the title in full], notice is hereby given that public meetings of the commissioners appointed under said act" would be held on Monday, Wednesday, and Friday of each week, at a time and place therein specified, "until further notice." The first public meeting held by the commissioners pursuant to this notice was on the 18th day of June, 1894. Counsel for the claimant contends that the statute of limitations did not commence to run until the 18th day of June, 1894, when the first public meeting of the commissioners was held pursuant to the formal notice given by them under the act of 1894, and, if his contention be well founded, manifestly the claim was timely filed, for it was filed on the last day of such six-months period. The relator's claim is twofold: First, that the statute of limitations commenced to run from the date of the first public meeting of the commissioners held under the act of 1893, and that, therefore, the time for filing claims expired on the 7th day of December, 1893,—long prior to the enactment of the amendment of 1894; and, second, that, even if the amendment of 1894 be controlling, the public hearing to which it relates is the first public hearing held by the commissioners after the amendment of 1894 took effect, which, as has been seen, was held on the same day the act took effect. It thus appears that, if either of the contentions of the relator be tenable, the claim was filed too late. The act is remedial, and it should receive a liberal construction, to accomplish the manifest object of the legislature. People v. Zoll, 97 N. Y. 203; People v. Fitch, 147 N. Y. 355, 41 N. E. 695. Counsel for the relator contends for the construction that the statute of limitations speak from the date of the original act, and he cites as authority for this proposition the case of Ely v. Holton, 15 N. Y. 595, and kindred cases follow-

ing and applying the doctrine of that case, wherein the rule is laid down, with reference to statutes re-enacted, "so as to read as follows," that :

"The portions of the amended sections which are merely kept without change are not to be considered as repealed and as re-enacted, but to have been the law all along; and the new parts or changed portions are not to be taken to have been the law at any time prior to the passage of the amendment. * * * The portions of the sections which are repeated are considered as having been the law from the time they were first enacted, and the new provisions are to be understood as enacted at the time the amended act took effect. In short, we attribute no effect to the plan of dovetailing the amendment into the original section, except the one above suggested, or preserving a harmonious text, so that, when future editions shall be published, the scattered members shall easily adjust themselves to each other."

The doctrine of this case, when properly understood, is sound. The point decided was that where, at the time an order for a new trial was granted, no appeal to the court of appeals was authorized by the Code, a subsequent amendment to the Code, authorizing appeals in such cases, would not relate back, so as to authorize an appeal where no appeal could be taken when the order was granted. The court held that the added provisions spoke from the time of their enactment, and not from the time of the original enactment of the sections of the Code into which they were incorporated. Other leading cases cited as applying this doctrine are In re Warde, 154 N. Y. 342, 48 N. E. 513, Moore v. Mausert, 49 N. Y. 332, and Gibbs v. Insurance Co., 63 N. Y. 114, 20 Am. Rep. 513. While these cases hold that the old provision which is re-enacted is not deemed repealed, but is deemed to have remained in force as matters arising in the interim, they fall far short of holding that the re-enacted provisions do not speak as of the time of their re-enactment as to matters arising in the future. Manifestly, those authorities are not controlling in the case at bar. There is another rule of statutory construction which we think is applicable here, and it is well stated in the case of People v. Supervisors, 67 N. Y. 109, 118, 23 Am. Rep. 94, by Allen, J., as follows :

"With us the enactment of a statute or a part of a statute, making the same read as prescribed by the amendatory statute, thus incorporating all that is deemed desirable to be retained of the old law in the new, is not regarded as a repeal of the parts thus transferred, but from the time of the enactment of the new statute the whole force of the enactment rests upon the latter statute. Although the former act remains upon the statute book, and is not repealed, either expressly or by implication, it is no longer the law of the land in respect to new cases that may arise."

This decision was cited with approval in People v. Wilmerding, 136 N. Y. 363, 368, 32 N. E. 1099, where Judge Peckham, speaking for the court, and referring to it, says :

"It was there distinctly decided that an earlier statute, which was amended and re-enacted in the shape of an amendment so as to read as prescribed in the later amendatory statute, was thereby wholly annulled as to all future cases, and became merged and incorporated into the later statute. It was further held that, when a statute accomplishing an amendment in this manner is itself repealed, the repealing act as effectually annihilates the earlier act which was amended as if it had been expressly mentioned in such repealing act."

Under the ordinary rules of construction, therefore, the statute of limitations would not commence to run until the time the amendatory act took effect. It is always, however, a question of legislative intent; and in this case it is quite clear, from the nature of the amendments, that the legislature intended to authorize the filing of new claims. The material additions to the law were provisions enlarging the powers of the commissioners, and enlarging the grounds upon which claims for damages might be made. The title and first section of the act of 1893 limited the claims for damages to those caused by "changes of grades of streets or avenues made pursuant to chapter 721 of the Laws of 1887, providing for the depression of railroad tracks in the 23rd and 24th wards in the city of New York." The claims were also thereby limited to damages already sustained. The work of depressing the railroad tracks and changing the grade of the streets pursuant to the act of 1887, referred to, had apparently all been completed prior to 1893, at the enactment of the law authorizing claims for damages. The second section of the original act also limited the jurisdiction of the commissioners to the damages sustained by "each owner of land or land and building fronting on said street or avenue and extending back therefrom not more than 100 feet." Section 1, as amended in 1894, expressly authorizes the claims for future as well as for past damages, and section 2 was amended so as to remove the limitation as to the depth of the lots. It is evident that, if the construction contended for by the relator be sustained, no force or effect can be given to these amendments; for the claims authorized to be filed under the original acts did not cover future damages, and did not apply to that part of premises fronting upon a street which lies in depth more than 100 feet therefrom. It would seem plain, therefore, that the legislature intended to authorize the filing of claims for the damages for which the commissioners were authorized, by the amended acts, to make awards. The only limitations for filing claims prescribed is six months, and it would seem to follow that the statute shows a legislative intent that that would not run until the amendment became of force. But we find further evidence of this legislative intent. The original act, as has been seen, limited the claims of damages to the changes of grade made pursuant to the law of 1887. The amended act extends the claims to damages sustained by changes of grade made under chapter 841 of the Laws of 1868, chapters 329 and 604 of the Laws of 1874, chapter 436 of the Laws of 1876, chapter 721 of the Laws of 1887, and chapter 339 of the Laws of 1892. It is unnecessary to consider the provisions of these various laws. Presumptively, there were changes affecting some premises under each of them, for which the legislature intended to authorize the recovery of damages. It appears in the case at bar that the grade of the street in front of the premises was elevated 4 feet in 1871 and 11.5 feet in 1887. Surely, the damages sustained by the change of grade in 1871 were not embraced in the original act, which only authorized claims for damages on account of changes of grade under the act of 1887. It is evident that, in order to get the damages under the various other acts to which the amendment of 1894 extended the claims and juris-

diction of the commissioners, it was necessary that claims be filed, for there was no authority to award damages except upon claims filed pursuant to the requirements of the special acts. Section 3 of the original act provided that the commissioners "shall consider the fair value of the work" of putting the claimant's premises in the same relation to the changed grade that it bore to the former grade. This is changed by the amendment, which declares that this consideration shall be "one of the elements" of the damages. Section 5 of the original act provides that the evidence should be submitted within one year from the first public hearing of the commissioners, and that the decision should be rendered within six months thereafter. The amendments change these periods to four years and one year, respectively. Section 7 of the original act allowed the commissioners $10 per day and expenses. This was amended so as to give the commissioners an annual salary of $3,000 and expenses. The provisions of the amendment to which attention has been drawn demonstrate that the jurisdiction of the commissioners was enlarged, and that the law was extended to claims and items of damages for which awards were not authorized under the original acts. The conclusion is irresistible that the legislature intended to authorize the filing of new claims after the enactment of the amendment.

The remaining question to be considered is whether the six months commenced to run from the time of the first meeting of the commissioners held after the amendment took effect, or from the meeting held on June 18, 1894, pursuant to the formal notice given under the amended law. It is significant, as bearing upon this question, that the legislature did not see fit to prescribe that the statute should run from the date of the enactment of the amendment, or from any time fixed by the legislature itself, but left it to be determined by the commissioners in fixing and advertising the time and place of their first public hearing. Those and the other provisions of the law rendered the notice quite important. The notice that the commissioners had previously given was that they would hear claims under the act of 1893. It was no notice that they would hear claims presented under the amended law. We think, therefore, that the fair construction of the statute is that the limitation did not commence to run until the public meeting of the commissioners held on the 18th day of June, 1894. These views are not in conflict with the decision in People v. Fitch, 147 N. Y. 355, 41 N. E. 695. It was there held that it was unnecessary for the commissioners to qualify over under the amendments of 1894, but it does not follow that it was unnecessary for them to give notice of the time and place of their first public meeting to hear claims for the first time authorized by the amended law.

It follows, therefore, that the award should be confirmed, with $50 costs and disbursements. All concur, except VAN BRUNT, P. J., who dissents.