PEOPLE ex rel. ASTOR v. STILLINGS, Chairman, et al.

(Supreme Court, Appellate Division, First Department. February 7, 1908.)

1. CERTIORARI—REVIEW OF ACTION OF PUBLIC BOARD.

The determination of change of grade damage commissioners appointed under Laws 1893, p. 1156, c. 537, as amended by Laws 1894, p. 1307, c. 567, and Laws 1905, p. 2116, c. 747, is reviewable by certiorari.

2. MUNICIPAL CORPORATIONS—STREETS—CHANGE OF GRADE—DAMAGES.

Laws 1887, p. 937, c. 721, authorized the department of public parks of New York City to change the grade of any street in the Twenty-Fourth Ward and Laws 1893, p. 1156, c. 537, as amended by Laws 1894, p. 1507, c. 567, and Laws 1905, p. 2116, c. 747, provided for the appointment of commissioners to ascertain damages occasioned by changes of grade under Laws 1887. *Held*, that where a formal resolution of the park board changing the grade of streets in the Twenty-Fourth Ward and all proceedings thereunder expressed on their face that they were taken in compliance with chapter 721 (page 937), the fact that the president of the board, in his certificate to the map, showing the change, filed by the board, stated that the improvement was to be made under Laws 1887, pp. 788, 937, cc. 577, 721, did not render the change one other than a change under chapter 721 (page 937), and hence the commissioners appointed under the act of 1893 had jurisdiction to ascertain damages.

Certiorari by the people, on the relation of William Waldorf Astor, to review the action of William E. Stillings and others, as commissioners appointed under Laws 1893, p. 1156, c. 537 et seq., in determining that they were without jurisdiction to determine the damages to certain property resulting from a change of the grade of a street. Writ sustained, and relator's claim reinstated.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Barclay E. V. McCarty (Jered C. Baldwin, Jr., and John M. Harrington, on the brief), for relator.

Francis K. Pendleton Corp. Counsel (Terence Farley, Theodore Connoly, and Stephen O'Brien, on the brief), for defendants

CLARKE, J. This is a writ of certiorari to review a determination of the change of grade damage commissioners appointed under chapter 537, p. 1156, of the Laws of 1893, as amended by chapter 567, p. 1307, of the Laws of 1894, and chapter 747, p. 2116, of the Laws of 1905, in dismissing the relator's claim for damages on the ground that they were without jurisdiction to try it. The determination of the commissioners is reviewable by writ of certiorari. Matter of Fitch, 147 N. Y. 334, 41 N. E. 699.

The relator was the owner of a parcel of land lying between River avenue on the east and Cromwell avenue on the west, and extending from Sedgwick avenue, now East 153d street, to East 161st street, in the Twenty-Third Ward of the city of New York. This portion of the city was formerly comprised within the limits of the town of Morrisania, Westchester county, which was annexed to the city on January 1, 1874. See section 3, c. 613, p. 929, of the Laws of 1873. By chapter 841, p. 1982, of the Laws of 1868, certain commissioners were authorized to lay out streets, roads, and avenues

in the town of Morrisania of such width, extent, and direction and of such grades as to them should seem most conducive to public good. They were to cause maps to be made and filed in the office of the town clerk of Morrisania and in the office of the register of Westchester county. These maps were made final and conclusive as well to said board of trustees of the town of Morrisania as in respect to the owners and occupants of lands, tenements, and hereditaments within the said town and in respect to all persons whomsoever. Pursuant to this authority, the commissioners duly filed a map on February 20, 1871, as the "Survey of Morrisania, Map No. 6," which covered the locus in quo, whereby the grades of both River and Cromwell avenues in front of the relator's premises were fixed. On the 30th day of August, 1889, a map was filed by the department of parks, known as "Map No. 1,033," and upon this map the grades of River and Cromwell avenues, which had been established by Morrisania Map No. 6, were elevated from 6 to 9½ feet, which constituted the damage complained of.

The question is: Is a claim for such damages within the jurisdiction of the commissioners? The answer requires a careful consideration of the statutes. Chapter 721, p. 937, of the Laws of 1887, is entitled "An act conferring certain powers upon the department of public parks in the city of New York, relative to the Twenty-Third and Twenty-Fourth Wards in said city." It provides for two things. It authorizes the department of public parks (a) to change the location, width, course, widening, lines, dimensions, grades, and class of any streets now or hereafter laid out in the Twenty-Third or Twenty-Fourth Wards of said city and the title to which shall not have been acquired by the mayor, aldermen, and commonalty of the city of New York for the purposes of a public street at the time of such proposed changes; (b) also to agree with the New York & Harlem Railroad Company upon plans for the depression of tracks and changing the grades of the railroad of said New York & Harlem Company, and carrying any streets in the Twenty-Third or Twenty-Fourth Wards across, on, over, or under said railroad, which plans, when so agreed upon, shall be executed and carried out forthwith by said railroad company at their expense, and the grades of the streets so agreed on for the crossing of said railroads shall be the established grades of said streets, and in furtherance of the persons hereby conferred to alter, amend, or revise any map or maps, plan or plans heretofore or hereafter adopted by said department by authority of law and to make and file new maps or plans to the extent deemed proper in order to show any such alterations, amendments, and revisions. When the park department filed its map on the 30th of August, 1889, changing the grades of River and Cromwell avenues, the title to neither of said streets had been acquired by the city for the purposes of a public street. The city acquired title to Cromwell avenue on the 20th of October, 1897, and to River avenue on the 8th of July, 1895, so that when Map No. 1,033 was filed the department of public parks had, under the provisions of chapter 721, p. 937, of the Laws of 1887, authority to change the grades of

those streets which had been established by the Morrisania commissioners.

Chapter 537, p. 1156, of the Laws of 1893 is entitled "An act for ascertaining and paying the amount of damages to lands and buildings suffered by reason of changes of grades of streets or avenues made pursuant to chapter 721 of the Laws of 1887, providing for the depression of railroad tracks in the Twenty-Third and Twenty-Fourth Wards in the city of New York, or otherwise," and provides as follows:

"Section 1. All persons owning lands, tenements and hereditaments in 157th street, formerly Prospect street, or in any other street or avenue in the Twenty-Third or Twenty-Fourth Wards of the city of New York, who has sustained damages by reason of a change of grade of any street or avenue which change was made in conformity with the provisions of chapter 721 of the Laws of 1887, * * * or was brought about by reason of the grading of Elton avenue, Railroad avenue or Melrose avenue, or otherwise, where such former grade had been duly established by competent authority according to law, by the board of trustees of the town of Morrisania, or otherwise, or where such grade had been otherwise established or had existed for twenty years prior to this act taking effect, shall be entitled to prove and recover the same from the mayor, aldermen and commonalty of the city of New York as hereinafter provided."

This act was amended by chapter 567, p. 1307, of the Laws of 1894, which added to the first section thereof this proviso:

"Provided, however, that as to land or lands, and buildings fronting on any street or avenue, except 157th street, the benefit under this act shall be limited to the areas wherein which grades are charged as shown on any map filed pursuant to chapter 721 of the Laws of 1887."

The commissioners dismissed the relator's claim, because it was their opinion that it was the intention of the Legislature in passing the original act authorizing their appointment (chapter 537, p. 1156, of the Laws of 1893), only to compensate those suffering damages where grades were changed by the depression or changing of the railroad tracks, and that, as it was and is conceded that the change in grade here complained of was not caused or occasioned by such depression of the tracks, they were without jurisdiction.

In People ex rel. Purdy v. Fitch, 147 N. Y. 355, 41 N. E. 695, the Court of Appeals had these statutes under consideration. The commissioners had made an award under and pursuant to the provisions of chapter 537, p. 1156, of the Laws of 1893, as amended by chapter 567, p. 1307, of the Laws of 1894, for damages to the relator sustained by her in consequence of the change of grade in streets in front of the premises owned by her. The comptroller having refused to pay the award, a writ of mandamus was issued, the General Term had reversed the order directing its issue, and an appeal therefrom had been taken to the Court of Appeals. The contention was made that the act of 1893 was in contravention of article 3, § 16, of the Constitution then in force, which provides that no private or local bill which may be passed by the Legislature shall express more than one subject and that shall be expressed in the title. The court said:

"The act in question is undoubtedly local, and if it contains more than one subject it is within the condemnation of the Constitution. Its character is remedial and should be liberally construed. People ex rel. Brisbane v. Zoll, 97 N. Y. 203. The whole question necessarily depends upon the meaning

that is to be given to the words 'or otherwise.' If they relate to the depression ·of the railroad tracks authorized by chapter 721, p. 937, of the Laws of 1887, .and the depression of such tracks is the subject expressed in the title under consideration, then there is a reference to something not fully expressed in ·the title, and consequently there is a failure to comply with the provision of ·the Constitution referred to. But such is not our understanding of the language used. Changes of the grades of streets and avenues had been authorized and made in the Twenty-Third and Twenty-Fourth Wards of the city, under ·the provisions of the Laws of 1887 and other acts; but no provision had been made for compensating the owners of lands abutting upon such streets for the ·damages they had sustained under any of such acts. It was to afford relief in this regard that the act in question was passed, and the subject expressed ·is unquestionably the payment of the damages sustained. There is a limitation to the territory to which the act applies to the Twenty-Third and Twenty-Fourth Wards of the city. It also limits the damages to those sustained by reason of the changes of grades of streets and avenues. It particularly specifies ·the changes of grade authorized by the law of 1887, but does not limit the awarding of damages to the changes authorized by that act, but includes changes 'otherwise' made pursuant to authority. This, it appears to us, is the fair reading and the reasonable interpretation of the language used; and, if we are correct in this view, it follows that but one subject is mentioned, and that is expressed in the title."

It therefore follows that, in the view of the Court of Appeals, the act of 1893 provided for damages in the Twenty-Third and Twenty-Fourth Wards caused by the change of grade of streets, and was not confined to those caused by depression of railroad tracks; for, if so construed, it would have held the act unconstitutional. The court eliminated the depression of railroad tracks as a jurisdictional element. The act of 1894 limited the powers of the commission to the territory shown on any maps filed pursuant to chapter 721, p. 937, of the Laws of 1887. The city and the commissioners claimed that that reference was to those parts of the act of 1887 which provided for agreement with the railroads for depression of the tracks and filing of maps in pursuance of those agreements, and say that but two such maps were filed, upon neither of which appears the property made the subject of this claim. But, as I have pointed out, the act of 1887 was not confined to providing for the depression of railroad tracks, but empowered the board of parks to change the grades of the streets and avenues in the Twenty-Third and Twenty-Fourth Wards of the city of New York, and to file new maps showing such changes of grade wherever the title to such streets or avenues had not been acquired by the city at the time of the change of grade. The inquiry is, therefore, reduced to the question: Was the map No. 1,033, filed August 30, 1889, filed under the provisions of chapter 721, p. 937, of the Laws of 1887? For, if it was not, it is clear that the commissioners had no jurisdiction.

Eliminating the question of the depression for the railroad tracks, the city claims that this map was not filed under chapter 721, p. 937, ·of the Laws of 1887, because of the certificate thereon contained, which is the certificate of the president of the park board, and reads as follows:

"I, Waldo Hutchins, president of the board of parks of the city of New York, do hereby certify that this is one of three similar maps or plans, with explanatory remarks, caused to be made by the department of public parks, ·showing revised system of avenues and streets * * * in the Twenty-Third Ward of the city of New York. The plan having been hitherto prepared and

filed by said department, and taken from file and amended as directed by the board of street opening and improvement, under authority of chapters 577 and 721 of the Laws of 1887, said plans, with explanatory remarks, are hereby again certified and refiled as provided by said acts.

"Dated New York, August 27, 1889."

And the claim is made that, as the certificate mentions two acts of 1887, the plan does not come within the purview of the damage commission law, because it is not stated to be exclusively under chapter 721, p. 937, Laws 1887. On the 26th of February, 1889, Mr. Chalfin, the topographical engineer, submitted to the park board for adoption a map or plan showing the proposed grades for streets, avenues, etc., and said:

"I inclose two resolutions for adoption, namely: First, to establish grades under chapter 577 of the Laws of 1887."

He subsequently, on April 15, 1889, wrote:

"I herewith send you a form of resolution to take the place of the one inclosed in my letter of February 26th last, to change, fix, and establish the grades of avenues, streets, and roads in that part of the Twenty-Third and Twenty-Fourth Wards, etc. The resolution to be adopted after the hearing prescribed by chapter 721 of the Laws of 1887. The general character and extent of the contemplated change consists in changing, fixing, and establishing the grades of avenues, streets, and roads in the said part of the Twenty-Third and Twenty-Fourth Wards, as shown in the map dated February 26, 1889."

On the same day the minutes of the board of public parks show the receipt from the topographical engineer of the map showing the proposed grades at the locus in quo. On motion, "said map was ordered placed on exhibition and advertised in accordance with chapter 721 of the Laws of 1887." On May 22, 1889, the minutes show an affidavit of the clerk of the City Record showing the publication of the notices as required by law of the proposed changes in the streets, naming them, stating:

"The general character and extent of the contemplated change consist in changing, fixing, and establishing the grades of the avenues, streets, and roads in the said part of the Twenty-Third and Twenty-Fourth Wards in pursuance of the provisions of chapter 721 of the Laws of 1887. A map showing the proposed change is on exhibition in said office."

The minutes of June 26, 1889, show the following action of the board of parks:

"Resolved, that in pursuance of the provisions of chapter 721 of the Laws of 1887, this board does hereby alter, amend, and revise the maps or plans heretofore adopted by it, by authority of law, and change, fix, and establish the grades of certain avenues and streets as shown on a map or plan entitled, etc., dated New York, February 26, 1889, and signed by S. F. Chalfin, topographical engineer, and does hereby approve and adopt said map or plan; * * * and that the president of this board be and he is hereby designated and directed to cause three similar maps or plans to be made to be certified to by him and to cause the same to be filed. * * *"

Thereafter the three copies were received from Chalfin. They were filed in the register's office as No. 1,033, and in the park department, and in the Secretary of State's office. The corporation counsel had, by letter of January 31, 1888, advised the park department that on the 25th day of June last an act (chapter 721, p. 937, of the Laws of 1887)

had been passed authorizing the park department, among other things, to change the location, width, and lines of any street then or thereafter laid out in the Twenty-Third or Twenty-Fourth Wards title to which shall not have been acquired by the city for the purpose of a public street, avenue, etc., and stated that under this act he was of the opinion that:

"The exclusive power to make changes of the character described by you in your letter is now vested by law in the department of parks, and the passage of that act nullified the resolution theretofore adopted by the board of street opening and improvement; it not having been carried into effect at the time of the passage of the act referred to."

So that it appears that the formal resolution of the park board and all the proceedings thereunder were expressed to be in compliance with chapter 721, p. 937, of the Laws of 1887, and that the very letter relied upon by the city, the first letter of the engineer, referring to chapter 577, p. 788, of the Laws of 1887, was by him withdrawn, and a proposed resolution sent to the board by him, which was adopted, and that by some error the allusion to that chapter, as well as to the board of street opening and improvement, which under the opinion of the corporation counsel was divested of jurisdiction, crept into the certificate I do not think that the formal action of the board can be in any way limited, altered, or affected by extraneous, unwarranted words put into the certificate by the agent of the board directed to carry out its will.

Chapter 721, p. 937, of the Laws of 1887, conferred authority upon the department of parks to file the maps showing the grades fixed by it. Section 42 of the consolidation act (chapter 410, p. 9, of the Laws of 1882, as amended by chapter 418, p. 885, of the Laws of 1893), in force at the time, provided that:

"The head of the department of public parks shall be called the 'Board of Parks,' and consist of four members."

Section 46 of the consolidation act provides that:

"A majority of the members of the board of any department of the city government shall constitute a quorum to fully perform and discharge any act or duty authorized, possessed by or imposed upon any department or any board as aforesaid."

The resolution adopted by the unanimous vote was the formal expression of the board of public parks in the exercise of the powers conferred upon it by chapter 721, p. 937, of the Laws of 1887. Clearly the deliberate act of the entire board could not be affected by any act on the part of the president in the performance of a purely ministerial function of appending his certificate. "It is a well-settled principle that public powers or trusts devolved by law or charter upon the council or governing body, to be exercised by it when and in such manner as it shall judge best, cannot be delegated to others. * * * On the other hand, a municipal corporation may appoint agents or give directions to subordinate officers to perform duties of a ministerial or administrative character." Birdsall v. Clark, 73 N. Y. 73, 29 Am. Rep. 105. "The report or certificate of the officer is evidence only of the fact which by law he is required or authorized to certify." Board of Water Commissioners v. Lan-

sing, 45 N. Y. 19; Tripler v. Mayor, 125 N. Y. 617, 622, 26 N. E. 721.

Nor do I think that the reference in the certificate to an act which obviously did not apply would have any force and effect. Chapter 577, p. 788, provided for action by the board of street opening and improvement. By chapter 721, p. 937, the power to make new grades was lodged exclusively in the park board. Even if the map was filed under chapter 577, p. 788, it was also filed under chapter 721, p. 937, and so came within the provisions of chapter 567, p. 1307, of the Laws of 1894. The Court of Appeals and this court, when considering this damage commission act, have said that it was remedial in its nature and should be liberally construed. People ex rel. Purdy v. Fitch, 147 N. Y. 355, 41 N. E. 695; People ex rel. Grout v. Stillings, 76 App. Div. 143, 78 N. Y. Supp. 942; People ex rel. Fitch v. Lord, 9 App. Div. 458, 41 N. Y. Supp. 343. The Court of Appeals deliberately rejected that interpretation of the act of 1893 which limited it to damages for the depression of the railroad tracks, upon the ground that to so construe it would render it unconstitutional. Chapter 721, p. 937, of the Laws of 1887, authorized the very thing which was done in this case, and I find no difficulty in concluding that the map in question was filed thereunder. It had been long on file when the remedial act was passed, and the evidence establishes that this is the only map on file showing the grades or streets or avenues in the territory covered by that map during the entire period that elapsed between the adoption of the resolution of the park board referred to and the date when that board's jurisdiction over streets and avenues in the Twenty-Third and Twenty-Fourth Wards ceased.

I am satisfied that the changed grade damage commissioners had jurisdiction, that it was error to dismiss the claim, that the writ should be sustained, the proceeding reversed, the claim reinstated, and the board directed to proceed to determine the same, with costs. All concur.