THE PEOPLE OF THE STATE OF NEW YORK ex rel. CENTRAL
TRUST COMPANY, as Substituted Trustee under the Will
of JASON ROGERS, Deceased, Respondent, *v.* WILLIAM
A. PRENDERGAST, as Comptroller of the City of New
York, Appellant.

Constitutional law — change in grade of streets and highways
— interest on awards for damages caused thereby — constitution-
ality, construction and effect of statute (L. 1910, ch. 701) provid-
ing for interest on such awards — statute extends to awards for
all damages sustained, whether in the future or in the past.

1. Chapter 701 of the Laws of 1910, adding section 59a to the High-
way Law (Cons. Laws, ch. 25), providing for interest on awards for
damages sustained by reason of change of grade of a street or high-
way, is not a local but a general law and does not violate section 16
of article 3 of the State Constitution; as the act is general the form
of the title is unimportant, since a general act requires an enacting
clause only, nor is it a city law in any sense, but a general law
operating throughout the state.

2. The intention in this instance depends on the language of the
act read in the light of the previous decisions of the courts and the
history of legislation upon the subject. It embraces in terms all
awards thereafter made and, as it is not limited to damages pre-
viously sustained, it extends to all damages whenever sustained
whether in the future or the past.

3. The fact that the legislature had theretofore provided for the
payment of damages to the owners of property already caused in
theory though not yet inflicted in fact by reason of change of grade
of a street, and did not then provide for the payment of interest,
does not invalidate subsequent legislation which provides for
interest on the award.

4. The legislature has all the power of legislation there is, except
as limited by the Constitution, either expressly or by necessary
implication, and it is well settled that a statute authorizing the
payment by municipal corporations of claims founded in justice
and supported by a moral obligation does not conflict with section
10 of article 8 of the State Constitution.

*People ex rel. Central Trust Co.* v. *Prendergast,* 143 App. Div.
935, affirmed.

(Argued April 26, 1911; decided May 16, 1911.)

Appeal from an order of the Appellate Division of the Supreme Court in the first judicial department, entered March 31, 1911, which affirmed an order of Special Term granting a motion for a peremptory writ of mandamus to compel the defendant to pay to the relator a certain award made in change of grade proceedings, with interest.

The facts, so far as material, are stated in the opinion.

*Archibald R. Watson, Corporation Counsel* (*Clarence L. Barber* and *Theodore Connoly* of counsel), for appellant. Chapter 537 of the Laws of 1893 is a local law, and any act amendatory of a local law is itself a local law. (*People ex rel. Purdy* v. *Fitch*, 147 N. Y. 355; *People* v. *Hills*, 35 N. Y. 449; *People* v. *O'Brien*, 38 N. Y. 193; *Corscadden* v. *Haswell*, 177 N. Y. 499; *Cahill* v. *Hogan*, 180 N. Y. 304; *Matter of City of Rochester* v. *Bloss*, 77 App. Div. 32; *Rogers* v. *Union R. Co.*, 10 Misc. Rep. 57; *People* v. *Supervisors*, 16 N. Y. 10.) Interest on damages was not allowed by the act of 1893, and none can now be allowed except by amending that act. (*People ex rel. Central Trust Co.* v. *Stillings*, 136 App. Div. 438; 198 N. Y. 504.) So far as it applies to the act of 1893 the amendment of 1910 does not express the subject in its title. (N. Y. Const. art. 3, § 16; *E. P. & C. Co.* v. *City of Buffalo*, 195 N. Y. 286; *Johnston* v. *Spicer*, 107 N. Y. 185.) The amendment of 1910, so far as it applies to New York, is a special act and it was not transmitted to the mayor. (*Sauer* v. *City of New York*, 180 N. Y. 27; 206 U. S. 536.)

*Barclay E. V. McCarty, Jared G. Baldwin, Jr.,* and *John M. Harrington* for respondent. Chapter 701 of the Laws of 1910 is a general public law and not a "private or local bill." (*Matter of Church*, 92 N. Y. 1; *People ex rel. N. Y. E. L. Co.* v. *Squire*, 107 N. Y. 593; *Ferguson* v. *Ross*, 126 N. Y. 459 ; *Kittinger* v. *Traction Co.*, 160 N. Y. 377; *St. John* v. *Andrews Institute*, 191 N. Y.

254.) A general act needs merely an enacting clause; and there is no constitutional provision requiring that a statute of that character shall be confined to one subject or that the subject of the legislation shall be expressed in the title. (*Ferguson* v. *Ross*, 126 N. Y. 459, 463; Const. of N. Y. art. 3, § 14.) Chapter 701 of the Laws of 1910 cannot be transformed from a general act into a local law by the fact that the awards of the change of grade damage commission are covered by the legislation. (*St. John* v. *Andrews Inst.*, 191 N. Y. 254.) The contention that because chapter 701 of the Laws of 1910 was enacted as an amendment to the Highway Law, the new statute cannot apply to the city of New York at all is untenable. (*Matter of Vil. of Middletown*, 82 N. Y. 196 ; *Ferguson* v. *Ross*, 126 N. Y. 459; *Gubner* v. *McClellan*, 130 App. Div. 716.) The contention that chapter 701 of the Laws of 1910 is a special city law subject to the provisions of section 2 of article 12 of the State Constitution and consequently invalid because not accepted by the city of New York cannot be sustained. (*Matter of Dobson*, 146 N. Y. 357; *People ex rel. Einsfeld* v. *Murray*, 149 N. Y. 367.) The statute under consideration cannot be successfully assailed on any constitutional ground. (*People ex rel. Purdy* v. *Fitch*, 147 N. Y. 355; *Matter of Borup*, 182 N. Y. 222.)

Vann, J. This litigation has a long and varied history. It began in 1893 shortly after the passage of chapter 537 of the laws of that year, which authorized the appointment of commissioners to estimate the loss and damage sustained by abutting owners owing to a change of grade made in certain streets of the city of New York pursuant to chapter 721 of the Laws of 1887. The owners affected were authorized to prove the damages sustained by them, if any, and to recover the amount thereof from the city. The commissioners were required to make a just and equitable award, and the comptroller was directed

to pay the same through the issue of bonds for the purpose. While the change of grade had been directed several years before, it was not physically made in front of the premises in question until about September, 1893. One Jason Rogers had owned said premises from 1857 until his death in 1868 and since then by virtue of his will the title thereto has been in trustees and is now in the relator as substituted trustee. In November, 1893, the trustees then in charge of Mr. Rogers' estate filed their claim, which, together with all others of like character, was strenuously contested by the city. In December, 1901, the commissioners made an order dismissing the Rogers claim on the ground that they had no jurisdiction to pass upon it and it was not until April, 1905, after protracted efforts, that the order was vacated and the claim sent back to the commissioners for determination. The city, however, appealed from the order of the Special Term so sending the claim back, but in July, 1905, the appeal was dismissed by the Appellate Division. The city authorities at an early stage in their opposition to claims filed contended that no damages could be awarded unless the property had been injured in connection with the depression of railroad tracks and a test case, brought to settle that question, was not finally decided until 1908 when the Appellate Division overruled the contention of the city. (*People ex rel. Astor* v. *Stillings*, 124 App. Div. 195..) As soon as the time to appeal from the decision in that case had expired and it was known that no appeal could be taken, the Rogers claim was tried and in August, 1909, the commissioners awarded the sum of $20,400, but although duly requested to allow interest from the date of the physical change of grade they refused to do so. Upon review through a writ of certiorari issued in behalf of the relator, it was held that while the legislature could require a municipality changing the grade of public streets to pay consequential damages to abutting owners, no interest could be allowed on the award from the time

the change was actually made until the date of payment unless the statute specifically so provided. (*People ex rel. Central Trust Co.* v. *Stillings,* 136 App. Div. 438; 198 N. Y. 504.)

After the question of interest had thus been settled, a writ of certiorari issued in behalf of the city to review said award of $20,400, resulted in an order made by the Appellate Division setting it aside and granting a new trial upon the ground that although the evidence justified the amount, the commissioners had acted without power in supplementing the evidence before them by a personal view of the premises affected. (*People ex rel. City of New York* v. *Stillings,* 138 App. Div. 168.)

From the outset, as appears from affidavits read on behalf of the relator and not denied by the comptroller, it was the settled policy of the city authorities, but not including the present administration, to prevent the prompt making of awards and to delay the payment thereof when made. It was shown that in one of the many proceedings instituted by the city to set aside awards made, one of the commissioners stated officially that "for a period of about two years since I have been on this commission, the municipal authorities were urging us to proceed slowly and for quite some part of the time insisted that no case should be decided or certificate of award filed in the comptroller's office." (*People ex rel. Grout* v. *Stillings,* 76 App. Div. 143.) In another case in which the commissioners had long delayed their determination, a motion was made to punish them for contempt, and one of them, in an affidavit read in opposition, stated "that on December 9th, 1907, this commission received from the board of estimate and apportionment a formal direction, directing them not to make any awards until further notice."

The decision of this court settling the question of interest under the statute as originally passed, was filed on the 22d of February, 1910, and shortly thereafter and

owing thereto a bill was introduced at the same time in both senate and assembly to remedy the defect, as appears from the affidavit of Mr. Ward, who introduced it in the assembly. It was supported at hearings before committees and the governor by many distinguished citizens and it was opposed by the city, but by no one else. It became a law on the 25th of June, 1910, by the signature of Governor Hughes, who filed a memorandum giving his reasons for approving the same. Among other things, he said: "At common law the owner of land abutting upon a public street is not entitled to consequential damages for an injury he may suffer by reason of a lawful change in the grade of the street upon which his property abuts, but it is obvious that the change of grade may subject him to actual loss and to remedy the apparent injuries which resulted from a common-law rule statutes have been passed allowing damages for changes in grade. By a recent decision of the Court of Appeals it has been held that such awards of damages do not carry interest because the statutes have not expressly provided for interest. This bill is to remedy the defects in the statute. * * * I regard the bill as an act of justice."

After the bill became a law and in August, 1910, the Rogers claim was again tried and resulted in an award of $15,000. Demand was duly made upon the comptroller for payment of that amount together with interest at six per cent from the 15th of September, 1893, when the physical change of grade was made, and that he should issue bonds to provide for payment accordingly. He refused to pay either principal or interest upon the ground that chapter 701 of the Laws of 1910 "does not apply to awards made for change of grade damages in the city of New York." Thereupon the relator began this proceeding to compel the payment of said award, with interest. A peremptory writ was granted accordingly by the court at Special Term, and upon appeal to the Appellate Division unanimous affirmance was ordered upon

the law and not in the exercise of discretion.   The city appealed to this court.

The constitutionality of the act of June 25th, 1910, known as chapter 701 of the laws of that year, is challenged by the appellant on several grounds.   That act is an amendment of the Highway Law and forms chapter 25 of the Consolidated Laws.   A new section was added to be known as 59a, which is as follows: "Whenever awards shall be lawfully made, pursuant to any statute of this state, for damages sustained by real estate or any improvements thereon by reason of any change of grade of any street, avenue or road in front thereof, the award for the principal amount of damages sustained shall bear interest at the rate of six per centum per annum from the time of the change of grade to the time of the payment of the award."

The learned counsel for the city claims that this act violates section 16 of article III of the Constitution, because, as he argues, since it amends a local law it is itself a local law, yet it does not adequately express the subject in the title.   The act, however, does not amend a local law and it is not a local but a general law, for it applies to awards made pursuant to any statute of the state for damages sustained by reason of any change of grade of any street, avenue or road in the state.   As was well said by Mr. Justice PAGE at Special Term, "While it applies to awards made pursuant to a local law applicable to the city of New York, it applies to all awards of the same class made anywhere within the State.   There is no limitation as to locality."   It is part of the Highway Law which covers the entire state and applies wherever the circumstances permit the application thereof the same as any general law.   The section in question applies to all localities in which real estate has been injured by reason of any change of grade of any street, avenue or road in front thereof, provided some statute authorizes an award of damages therefor.   Such localities are spread all over

the state.   It was not necessary for the legislature to amend by a separate act with an appropriate title each of a score or more "change of grade statutes," every one confined to a particular locality, but it could proceed by one general and comprehensive act to cover them all as well as those to be enacted in the future.   As the act is general the form of the title is unimportant, since a general act requires an enacting clause only.   (*Ferguson* v. *Ross*, 126 N. Y. 459.)

The claim that the act of 1910, so far as it applies to the city of New York, is a "special city law" within the meaning of section 2 of article XII of the Constitution and, hence, required transmission to the mayor, is untenable, for the statute is neither a "general city law," which relates to "all the cities of one or more classes," nor a "special city law," which relates "to a single city or to less than all the cities of a class."   It is not a city law in any sense, but a general law operating thoughout the state.   It is not limited to cities but applies to every political division of the state and affects counties, villages and towns as well as cities.   As was recently said by Judge CHASE, "If the act relates to persons, places and things as a class and is neither local nor temporary the mere fact that its practical effect is special and private does not necessarily prove that it violates ·constitutional provisions against special legislation."   (*St. John* v. *Andrews Institute*, 191 N. Y. 254, 270.) ·

It is unnecessary to consider the claim that the statute might apply to awards made before it was passed, because no such question is now before us, as the award in favor of the relator was not made until after the act had gone into effect.   Nor is it necessary in view of what has already been said to discuss the claim that the act does not apply to the city of New York.

While we unite in overruling the various grounds upon which the appellant urges us to reverse the order appealed from, it is suggested that the act should be so construed

196 People ex rel. C. T. Co. *v.* Prendergast. [May,

Opinion of the Court, per Vann, J.          [Vol. 202.

as to have no retroactive effect, not even to embrace awards made after its passage and should be limited so as to exclude all cases where the damages were inflicted prior to its passage. While courts are loath to hold that a statute acts on the past, still it is their duty to so construe it when the legislature manifestly intended that result. The intention in this instance depends on the language of the act read in the light of the previous decisions of the courts and the history of legislation upon the subject. The words used cover all awards made after the passage of the act, for the command is "Whenever awards *shall be* lawfully made, * * * the award for the principal amount of damages sustained shall bear interest," etc. It embraces in terms all awards thereafter made and, as it is not limited to damages subseqnently sustained, it extends to all damages whenever sustained whether in the future or the past. When this language is read in connection with the previous decisions of the courts, the facts which obviously led to the amendment of the act, the grounds of the opposition thereto and the history of the entire legislation, the intention of the legislature is clear to my mind. As Governor Hughes said in his memorandum, the bill is "an act of justice," yet it would not be if confined in its application to damages to be sustained in the future. For nearly twenty years justice to the relator has been delayed without any fault on its part, and I think the legislature intended to remedy such wrongs at least as to all awards made after the act took effect, wherever the evil existed in any part of the state.

We held in the case of this relator against Stillings, that the act of 1893 is constitutional as a recognition of claims founded upon a moral obligation, but it is suggested that upon the passage of that act the moral obligation became merged in a legal right and exhausted the power of the legislature. Upon this theory it is argued that the amendment of 1910 virtually authorizes

a gift of money belonging to a municipal corporation, and, hence, violates section 10 of article VIII of the Constitution. As it seems to me, this argument substitutes a theory of law in the place of constitutional power.

The legislature has all the power of legislation there is, except as limited by the Constitution, either expressly or by necessary implication. It is well settled that a statute authorizing the payment by municipal corporations of claims founded in justice and supported by a moral obligation does not conflict with this provision of the Constitution. (*Matter of Borup*, 182 N. Y. 222.) In that case it appeared that a statute passed in 1892 authorized towns and town authorities to repair, grade and macadamize highways at the expense of the town upon complying with certain conditions. (L. 1892, ch. 686, § 69.) The statute applied to any town in which a highway had been or thereafter should be repaired, graded and macadamized. In March, 1901, the town authorities caused the highway in front of certain premises to be repaired, graded and macadamized, and owing to the change the property of one Borup had been damaged to the extent of $3,000. In 1903, after this damage had been inflicted, a statute was passed which provided that the owners of land adjacent to a highway shall be entitled to recover their damages from the town for any change of grade in the highway or any repairs by the authorities of the town made pursuant to the provisions of section 69 of chapter 686 of the Laws of 1892. (L. 1903, ch. 610.) The following question was certified to us on the appeal: "Is chapter 610 of the Laws of 1903, so far as it may be construed to make the town of East Chester liable for damages sustained through change of grade made prior to the enactment of that act, unconstitutional and void?" In answering this question in the negative Judge O'BRIEN, speaking for all the judges, said: "The improvement of the highway in front of the petitioner's property was, as we have seen, author-

**198** · People ex rel. C. T. Co. *v.* Prendergast. [May,

Opinion of the Court, per Vann, J. [Vol. 202.

ized by section 69, chapter 686, of the Laws of 1892. That act, however, made no provision for the damages that property owners might sustain by the change of grade or otherwise, and it was not until two years after the grading and improvement of the highway that there was any law under which the petitioner was entitled to assert his claim against the town for damages, and it is this retroactive feature of the law upon which the contention on the part of the town chiefly rests. It will not be, and is not, contended that when the act of 1892, under which the change of grade was made, was enacted, the legislature had not ample power to provide for the payment of any damages which property owners might suffer from the improvement of the highway. *There is not, we think, anything in the Constitution that prevents the legislature in 1903 from enacting a law that it might have enacted in 1892.* When an individual is injured or damaged in his property rights by reason of a public work authorized by the legislature, there is nothing in the Constitution to prohibit the legislative body from providing for just compensation for the injury thus inflicted under its authority. While there was no legal right to damages prior to the act in question, yet the claim of the property owner to compensation for the injury was founded in equity and justice, and it was competent for the legislature to recognize the justice of such a claim by making it obligatory upon the town to pay it when the amount was ascertained in due course of law. The payment of compensation by the town to the property owners, which the statute provides for, is in no proper sense a gift or gratuity of either the money or property of the town, or a loan of its money or credit to an individual. It is simply a method which the legislature adopted to repair an injury to an individual inflicted by the town under the authority of law, and the mere fact that the injury was suffered at a time when the property owner was without remedy could not prevent the law-making power from providing a rem-

edy afterwards.   There is no provision of the Constitution that restricts the legislature from providing for the payment by a municipality of claims against it that are founded in equity and justice and which could have been authorized originally.   The claim in question is of that character."   (p. 225.)

When the act of 1893 was passed authorizing the appointment of commissioners to award damages sustained by the relator and other abutting owners, as we have held, the Constitution authorized the payment of principal and interest, but the statute provided for the payment of principal only.   (*People ex rel. Central Trust Co. v. Stillings*, 136 App. Div. 438; 198 N. Y. 504.) Without considering the theory that, under the circumstances, interest is a part of the remedy, because if the obligation had been paid as soon as the statute went into effect there would have been no duty, moral or otherwise, to pay interest, I am unable to see how the legislature lost the power to provide for the payment of interest. The moral obligation to pay interest was as great as the moral obligation to pay the principal, and I cannot find in the Constitution any provision which limits the power of the legislature to a single effort to do justice in such cases.   If something is omitted by oversight or because the legislature when passing a given act fails for any reason to afford full relief, cannot that body supply the omission or supplement the provisions so as to make them complete in the interest of justice?   Can the authority given by one legislature to discharge part of a moral obligation prevent a subsequent legislature from authorizing the discharge of the other part?   Does an imperfect effort to do justice exhaust the right and hamper subsequent legislatures for all time from doing complete justice? In my judgment there is no warrant in the Constitution, either in express language or by necessary implication, for this position.   The power to fully discharge a moral obligation cannot be cut down by a legal theory and

the merger of moral obligation in legal right is but a theory of law, and is not mentioned in the Constitution. The principle of the *Borup* case covers this case, for when the legislature acted in 1892 it is presumed that it considered the whole subject including damages to abutting owners, yet it gave no authority to pay such damages. Eleven years later, after the damages had been inflicted pursuant to that act, another was passed providing for the payment thereof. So, in the case before us, the act of 1893 provided for the payment of damages already caused in theory though not yet inflicted in fact, but did not authorize the payment of interest. In 1910 the payment of interest was directed as to all future awards made for damages whenever sustained, whether in the future or the past.

The power of the state to pass laws through its legislature is the most important power it possesses, and one that should never be interfered with by the courts except when imperatively required by the fundamental law. There is no express command of the Constitution affecting the statute before us, and to decree a command by implication resting only on a rule of the courts with no foundation in the Constitution would establish a dangerous precedent that might lead to grave difficulties in the future. It would in effect be an amendment of the Constitution made by the courts.

I recommend that the order appealed from be affirmed, with costs.

WERNER, HISCOCK and COLLIN, JJ., concur; CULLEN, Ch. J., GRAY and HAIGHT, JJ., concur in result.

Order affirmed.