ARTHUR K. O'HARA, Respondent, v. THE STATE OF NEW YORK, Appellant.

Where a person has voluntarily furnished property or rendered valuable services to the state at the request of state officers and for state purposes, but with expectation of payment for the same, the legislature may ratify the acts of such officers, although previously unauthorized, and thus create a legal liability on the part of the state.

An act of the legislature, supplying defects or omissions in pre-existing legislation whenever a liability may be predicated against the state, is not the audit or the allowance of a claim ; and so, is not obnoxious to the provision of the state Constitution (art. 3, § 19) prohibiting the audit or allowance by the Legislature, of any private claim or account against the state.

Upon a claim filed against the state for services performed and materials furnished under the directions of the quarantine officials in the years 1875 and 1876, in the repair of steamers and other property of the state used for quarantine purposes in the harbor of New York, it appeared that the claimant brought suit against the health officer for the amount of the claim and was defeated upon the ground that that officer had incurred no personal liability and that the claim was against the state. Thereupon in 1878 claimant filed his claim against the state before the Board of Audit which, upon a hearing thereon, decided that the state was not liable therefor and so dismissed the claim. Application was thereafter made each year to the legislature for relief up to 1886. In that year an act was passed (Chap. 472, Laws of 1886), authorizing the Board of Claims to rehear, audit and determine the claim and to award

such sums as should be a reasonable compensation for the work and services. *Held,* that this act was not violative either of the Constitutional provision above referred to or of the provision (art. 7, § 14) prohibiting the legislature or any persons acting in behalf of the state from auditing, allowing or paying any claim which, as between citizens, would be barred by lapse of time; that prior to the passage of said act of 1886 no legal claim, enforceable in any court, existed against the state for the demand in question; that by said act the action of the quarantine officials was adopted and approved, and so for the first time the claim had a legal existence against the state and the cause of action then arose.

Also, *held,* that the value of the materials furnished constituted a part of the claim, was fairly within the spirit of the act and was properly allowed.

In the case of an imperfect claim or obligation which is unenforceable, by reason of some vice or defect therein which may be cured or waived by the debtor, a right of action arises thereon at the time the claim becomes purged of the vice by the action of the debtor and not before.

*McDougall* v. *State* (109 N. Y. 80) distinguished.

(Argued December 14, 1888; decided January 15, 1889.)

APPEAL from award of the Board of Claims made February 17, 1888.

The nature of the claim and the material facts are set forth in the opinion.

*Charles F. Tabor,* attorney-general, for appellant. Claimant's assignors were bound to inquire and ascertain the extent of the authority of the health officer. (*Martin* v. *Farnsworth,* 49 N. Y. 558.) No power to create any debt against the state existed upon the part of the commissioners or the health officer. (*People* v. *Supervisors,* 52 N. Y. 563; *People* v. *Schuyler,* 69 id. 242.) Chapter 472 of the Laws of 1886 is repugnant to the provisions of the Constitution of the state. (Const. art. 3, § 19; Id. art. 7, § 14; *Corkings* v. *State,* 99 N. Y. 451; *McDougall* v. *State,* 109 id 71, 80.) The determination by the board of audit was not such a judgment as the state could have pleaded in bar of any subsequent claim filed and presented by claimant for the same services. (*Wheeler* v. *Ruckman,* 51 N. Y. 391; *Watson* v. *Cowdrey,* 23 id. 169; Code of

Civ. Pro. § 1209 ; *Quinby* v. *Claflin*, 27 Hun, 611 ; *Lewis* v. *State*, 96 N. Y. 71.) The act of 1866 is in violation of section 16 of article 3 of the Constitution, for the reason that it is a private bill, embraces more than one subject, and the power granted by the act to rehear, audit and determine and direct an award is not embraced in the title. (*Baldwin* v. *Mayor, etc.*, 2 Keyes, 393 ; Dwarris on Statutes, 354 ; *People* v. *Suprs.*, 43 N. Y. 10 ; *In re Goddard*, 94 id. 548 ; *City of Watertown* v. *Fairbanks*, 65 id. 588 ; *In re Paul*, 94 id. 507.) The state and its officers are entitled to no less protection than a private litigant. (*People ex rel. Millard* v. *Chapin*, 104 N. Y. 102.)

*William B. Ruggles* for respondent. Chapter 472 of the Laws of 1886, under which this claim was filed in the Board of Claims, is not in violation of section 16 or section 19 of article 3 of the Constitution of this state. (*Cole* v. *State*, 102 N. Y. 54.) This claim is not barred by the constitutional limitation, article 7, section 14. (*Corkings* v. *State*, 99 N. Y. 495.) The legislature had power to afford relief, provided only the claim had not already become barred by the statute of limitations. (*Corkings* v. *State*, 99 N. Y. 491 ; *McDougall* v. *State*, 109 id. 73; *Cole* v. *State*, 102 id. 48.) Statutes of limitation do not run against a claim where there is no judicial tribunal, with jurisdiction to hear and determine it, to which the claimant can resort. (*Hanger* v. *Abbott*, 6 Wall. 532.) The period of limitation begins to run from the time a cause of action accrues. (Code Civ. Pro. § 380; Code of Pro. § 74, 102 N. Y. 54.)

RUGER, Ch. J. This is an appeal by the state from an award made by the Board of Claims, for services rendered and materials furnished, at the request of the quarantine officials, by the claimant in the years 1875 and 1876, in repairing and fitting up vessels and property used in quarantine affairs in the harbor of New York.

There can be no question but that the maintenance of the

quarantine station in that harbor is of great public benefit and importance ; nor but that the legitimate expenditures therefor are a public necessity, justifying their incurrence and payment by the state. The organization of the quarantine system was created by the state for the benefit of the people ; is under its control ; its officers are appointed by it, and it has uniformly provided in some form or another, for their compensation, and for the procurement of the supplies necessary to its efficient operation, and it was the moral duty of the state to see that its agents properly discharged their obligations to the persons employed by them, in the service of the state.

The services and materials in question were rendered and furnished at the request of the state officials, the compensation therefor was honestly earned by the claimant a long time since, and it is a reproach to the state that satisfaction of the claim therefor should have been so long postponed, by controversies among state officials as to the department responsible for their payment. The Board of Claims have found that, in the years mentioned, the claimant performed services and furnished materials in the repair of the quarantine steamers and other property of the state, under the direction of the quarantine officials, of the value and for the amount named by them in the award. The undisputed evidence showed that the claimant, originally supposing the health officer to be liable for his claim, sued him in a state court, and was defeated upon the ground that that officer had incurred no personal liability by reason of such services, and that the claim therefor was against the state. Thereupon, in 1878, he filed his claim before the Board of Audit, and, after a hearing, it rendered a decision holding that the state was not liable therefor, but that the health officer was, and, therefore, refused to make an award in his favor, and dismissed the claim. Applications were thereafter made on behalf of the claimant to successive legislatures in each year, excepting that of 1880, with unavailing effect. In 1886, however, an act was passed, being the law under which the Board of Claims based its authority to make the award in question, which is as follows : " The

Board of Claims is hereby authorized to rehear, audit and determine the claims of * * * A. K. O'Hara & Co. * * * for work and services done and performed by them for the state under the directions of the quarantine officials, and to award to them * * * such sums as upon due proof before said board shall be a reasonable compensation therefor." It is now claimed by the attorney-general for the state that this act violates section 19, article 3, and section 14, article 7, of the Constitution and is, therefore, unconstitutional and void.

The provisions of the Constitution are as follows (Article 3, section 19): " The legislature shall neither audit or allow any private claim or account against the state, but may appropriate money to pay such claims as shall have been audited and allowed according to law."

Article 7, section 14: " Neither the legislature, canal board, canal appraisers, nor any person or persons acting in behalf of the state, shall audit, allow, or pay any claim which, as between citizens of the state, would be barred by lapse of time. The limitation of existing claims shall begin to run from the adoption of this section ; but this provision shall not be construed to revive claims already barred by existing statutes, nor to repeal any statute fixing the time within which claims shall be presented or allowed, nor shall it extend to any claims duly presented within the time allowed by law, and prosecuted with due diligence from the time of such presentment.    But if the claimant shall be under legal disability, the claim may be presented within two years after such disability is removed."

It was held by us in *Cole* v. *State of New York* (102 N. Y. 54), that an act of the legislature recognizing meritorious services rendered to the state without previous authority of law, and authorizing the Board of Claims to hear claims for compensation therefor, and award such sum as they might think proper and just, was neither an audit or allowance of a claim against the state within the meaning of section 19, article 3, of the Constitution.    We think our decision in that case disposes of the objection to the act under consideration.

A brief reference to the history of this claim seems to show that it comes within the principle laid down in that case. Under chapter 444 of the Laws of 1876, the Board of Audit was organized, and was authorized to hear all private claims and accounts against the state (except such as are now heard by the canal appraisers), and to determine the justice and amount thereof, and to allow such sums as it shall consider should equitably be paid by the state. The hearing of the claim in question by that board in 1878 was had under this law, and no other tribunal then existed, or was thereafter created by the state, competent to hear and determine such a claim until 1883, more than six years after the service had been rendered, and that tribunal was authorized to hear only such claims as should arise within two years previous to the time of filing the claim before it. The Board of Audit had no power to reopen and rehear claims once determined by it, and no appeal lay from its decisions except those provided by chapter 211, Laws of 1881, which were confined to awards made subsequent to January 1, 1879, and did not reach the award made upon the claim of the respondents. Its decision upon the claim, therefore, was final and conclusive between the parties and determined the fact that for the services in question no legal claim then existed against the state on behalf of the claimants. That determination necessarily proceeded upon the ground that the persons upon whose request the services were rendered had no authority to bind the state, and, therefore, that no legal cause of action existed against it. It was undoubtedly within the province of the legislature originally to have provided for the rendition of these services and the purchase of materials for the use and benefit of the quarantine station, and it is equally clear that it could by subsequent legislation ratify and approve any act performed for the benefit of the state, which it had original authority to legislate and provide for. (*Brown* v. *Mayor, etc.*, 63 N. Y. 240; *People* v. *Denison*, 80 id. 656; *People* v. *Stephens*, 71 id. 529).

It cannot be questioned, we think, but that when individuals voluntarily furnish property or render valuable services to the

state, at the request of state officers for state purposes, but with the expectation of payment for the same, the legislature may ratify the acts of such officers, although previously unauthorized, and create a legal liability on the part of the state to pay for such property and services, enforceable in its tribunals. The act of the legislature in supplying defects or omissions in pre-existing legislation whereon a liability may be predicated against the state, is clearly not the audit of a claim; neither is it an allowance thereof. The power of auditing and allowing is expressly referred to the tribunal authorized to hear and determine such claims, and they may allow or reject them as in their judgment and discretion seems just. This we understand to be the decision in the *Cole Case*, and we think it is founded on correct principles. As was there said, the exercise of such a power by the legislature does not, in any just or reasonable sense, conflict with the provisions of the Constitution, prohibiting it from auditing and allowing private claims or accounts against the state. It has undoubted power to authorize state officers and agents to contract debts, under certain circumstances, against the state, and, as we have before said, it can legalize such as have been, theretofore, illegally contracted by a subsequent exercise of its legitimate legislative power. It may create tribunals to hear and determine cases between the state and individuals, and it may by law enlarge the authority of existing tribunals to hear the same. In all this it neither audits or allows claims or authorizes their payment. It simply provides a tribunal before which the state may be prosecuted, and enacts that a limitation upon the authority of the tribunal shall not apply to certain obligations. Such a limitation is created by and may, therefore, be removed by legislative authority.

It would certainly be strange, and would subject the state to great loss and damage if in cases of emergency, and when legislative authority could not be previously obtained to authorize the same, that its servants should be powerless to obtain labor and materials necessary to save it from the destruction of its property, and be compelled to lose advances

made in reliance upon the justice and honor of the state, and believing that they would be subsequently reimbursed for expenditures made for its benefit. It cannot, we think, be said that the constitutional provision was intended to disable the state from paying for property or valuable services received by it from individuals, because they were furnished under the stress of an imminent necessity, without previous authority of law. Although such acts constituted no legal claim against the state, and could not be enforced in an action of law, they formed, in justice and right, irresistible claims upon its honor and are, we think, within the power of the legislature to legalize, and, when authorized and approved by legal tribunals, within its power to provide for and pay. We conclude, therefore, that no constitutional objection to the .act in question exists, and its enactment was a legitimate exercise of the power of the legislature.

A more serious question arises over the prohibition imposed upon the Board of Claims against auditing or allowing claims which, as between individuals, would be barred by lapse of time. Would this claim have been so barred, as between citizens of the state, at the time this statute was passed? If it would, then it must come within the prohibition of the constitutional provision.

We are of the opinion that it is not saved therefrom by the proviso exempting existing claims which have been duly presented within the time allowed by law, and prosecuted diligently thereafter. We think that proviso, by its express terms, applied only to claims existing at the time of the adoption of the amendment in 1874, and did not embrace future cases which were covered by the first paragraph of the section. That paragraph stands alone and states the rule to be applied to all claims subsequently arising. The claim in question, having accrued after the adoption of the amendment, must be determined by the rule of limitation which obtains " between citizens" as specified in the first paragraph. It is not clear precisely what the framers of the

amendment intended by this phrase; because there is but little analogy between the position of a state in reference to the prosecution of claims against it and the condition of a citizen, subject at all times and in numerous tribunals, to be brought into court and prosecuted for his liabilities. The state·can be prosecuted, in a legal sense, only by its own consent, and after it has created a tribunal to hear and decide claims against it.

It would be manifestly unjust to allow an honest claim against the state to be defeated by its omission to provide a tribunal where it might be prosecuted. (*Hanger* v. *Abbott*, 6 Wall. 532.)

In view of this condition it was held by this court in *Corkings* v. *State* (99 N. Y. 491) that presentation to and prosecution of claims before the legislature, in the absence of other tribunals competent to hear them, would be sufficient to save them from the bar presented by the constitutional amendment against existing claims.

We are, therefore, compelled to consider the naked question whether, as between individuals, this claim would have been barred by lapse of time, according to the general law of the state when the statute was passed. In the consideration of that question it must be taken as an established fact in the case, that prior to the passage of chapter 472, Laws of 1886, no legal claim, enforceable in any court, existed against the state for the demand in question. That question was adjudicated in 1878 by the Board of Audit in favor of the state.

By the legislation of 1886 the authority of the quarantine officials to contract for the services and materials in question on the part of the state, was ratified and approved by the legislature, and the claim for compensation therefor, then had for the first time a legal existence against the state. When, then, did a cause of action arise in favor of the claimant against the state? Obviously not until the legislative recognition. The language of the act of 1886, by clear implication adopts the authority of the quarantine officials to contract for the services and materials in question and acknowledges

acknowledges the liability of the state therefor, and the claim in question then had its origin.

It is conceded by the appellant that the award of the Board of Audit was not such an adjudication as would bar the claim presented to the Board of Claims, and it would seem to follow therefrom that the statute would not commence to run against the latter claim until its legislative recognition. It is undoubtedly true that the statutes of limitation are equally effectual in ordinary cases against equitable and invalid claims as well as valid and legal ones ; but we think, in the case of an imperfect claim or obligation which is unenforceable by reason of some vice or defect therein, which may be cured or waived by the debtor, that a right of action thereon arises at the time the claim becomes purged of the vice by the action of the debtor, and not before. The statute of limitation commences to run only after a cause of action has accrued, and it does not follow that because the statute has run against an imperfect obligation, that the debtor may not create a new obligation, although founded on one which has outlawed. In the case of an individual contracting with a pretended agent, who sues the supposed principal for an alleged breach of contract, and has been defeated upon the ground of want of authority in the agent to make the contract, such an adjudication would not defeat an action brought upon the same contract legalized by a subsequent ratification, even though the liability upon the original contract had in the meanwhile become outlawed. The imperfect obligation imposed by the original contract would have been perfected by the ratification, and the cause of action, although supported by the moral consideration afforded by the contract, would have been legally completed and made enforceable by the ratification alone. Suppose the quarantine officials had purchased lands in the harbor of New York for quarantine purposes, without authority, and the state had afterwards refused to pay for them, but, after the statute had run against such claim, should by legislative action authorize and direct such officials to take possession of such lands and appropriate them to the use of the state ;

can any one doubt but that a cause of action would then arise against the state for the value of such lands? We think not.    It was said by RAPALLO, J., in the *Cole Case:* " As a general rule, money expended or services rendered by one individual for the benefit of another do not create a legal liability on the part of the person benefited to make compensation.    But a law which should provide that in every such case if the party benefited ratifies the acts of the other, and accepts the benefits, he should be liable, would be free from objection, so far, at all events, as it should apply to future transactions.    When the legislature is dealing with the imperfect obligation arising from such a state of facts, it seems to us it does not transcend its powers by passing a law affording a remedy even in respect to past transactions, where the state adopts the act and is the party to make the compensation."

The case of *McDougall* v. *State* (109 N. Y. 80) is not in conflict with any views herein presented.    That claim arose upon a cause of action for damages in tort accruing in 1869. Liability for claims of this character was assumed by the state by chapter 321 of the Laws of 1870, and authority given to the canal appraisers to hear and determine them.    It was saved as an existing claim from the operation of the amendment to the Constitution in 1874, by the provision exempting claims duly presented and diligently prosecuted.    It was held, although it had been duly presented, it had not been diligently prosecuted thereafter, and was, therefore, barred by the statute of limitations.    We think the value of the materials furnished by the claimant, in the performance of the services referred to in the act, constituted a part of the claim, and were fairly within the spirit of the provision authorizing the hearing by the Board of Claims.

We are, therefore, of the opinion that the award appealed from should be affirmed.

All concur, except DANFORTH, J., dissenting.

Award affirmed.