## ADMIRAL REALTY CO. v. GAYNOR et al.

(Supreme Court, Appellate Division, First Department. December 1, 1911.)

1. MUNICIPAL CORPORATIONS (§ 993*)—TAXATION—TAXPAYER'S ACTION—RE-
STRAINING A LEGAL ACT.

A joint committee of members of the public service commission and members of the board of estimate and apportionment of New York City, received informal proposals from two companies operating car lines in the city for the operation of a route to be constructed, and made a report favoring the execution of a contract with the B. Company; but its report, though approved by the commission and the board, was not binding upon either. The act under which rapid transit railroads must be constructed requires many preliminaries before any contract for operation can become effective, and any proposed contract must be approved by the corporation counsel, the counsel to the public service commission, and the commission itself, and by the board of estimate and apportionment, and must also be subjected to a public hearing. *Held*, in a taxpayer's action to enjoin the contract to be made, as recommended by the joint committee, that there was no such imminence of the execution of the contract for operation as to justify a temporary injunction against its execution, or even an examination of its legality.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 993.*]

2. MUNICIPAL CORPORATIONS (§ 993*)—PUBLIC IMPROVEMENTS—CONTRACTS—
PERFORMANCE—INJUNCTION.

Bids were called for by the city of New York for the construction of a proposed subway in sections, the bids to be based on construction contracts, setting forth the agreement between the parties, the specifications for the work and materials, and the plans. The act under which the work was undertaken and the form of contract submitted to bidders provided for possible modifications of the plans and specifications. Pending the call for bids and the letting of the contracts, it was decided to make certain changes in the plans, etc., which might have been lawfully made after the contracts were entered into; but such alterations were not in fact made. *Held*, in a taxpayer's action to enjoin performance of the contracts, that the contracts awarded were not invalid, as different from those on which bids were invited, so as to justify an injunction pendente lite, and that whether the proposed changes were such as would probably cause a change in the amounts of the bids, so as to require new bids, was a matter in the discretion of the public service commission, which the court was not bound to review.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 993.*]

3. STREET RAILROADS (§ 13*)—RIGHTS IN STREETS—APPROVAL OF MAYOR—
"FRANCHISE."

Under Greater New York Charter (Laws 1901, c. 466) § 74, as amended by Laws 1905, c. 629, § 12, and chapter 630, prescribing the proceedings prior to a grant of a franchise by the city, and section 242, relating to the powers of the board of estimate, as amended by Laws 1905, c. 629, § 14, and Rapid Transit Act (Laws 1891, c. 4) § 5, as amended by Laws 1905, c. 631, the making of a contract by the city of New York merely for the construction of a subway, which is to be and remain the property of the city, does not grant to the contractor a "franchise" in the street, within the meaning of such charter provisions, requiring the independent approval of the mayor in certain cases.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 13.*]

For other definitions, see Words and Phrases, vol. 3, pp. 2929–2942; vol. 8, p. 7666.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, New York County.

Action by the Admiral Realty Company against William J. Gaynor and others. From an order denying a motion for an injunction during pendency of action, plaintiff appeals. Affirmed.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, MILLER, and DOWLING, JJ.

Louis Marshall, for appellant.

Louis H. Hahlo, for respondent board of estimate and apportionment.

George S. Coleman, for respondent public service commission.

Thomas F. Conway, for respondent Bradley Contracting Co.

SCOTT, J. The plaintiff appeals from an order denying its motion for an injunction pendente lite. This is a taxpayer's action, brought under the authority of section 51 of the general municipal law (Consol. Laws 1909, c. 24), for the purpose of enjoining (1) the carrying out of the terms of a resolution of the board of estimate and apportionment, purporting to have been passed on July 21, 1911, directing the preparation of a contract to carry out a plan of operation by the Brooklyn Rapid Transit Company, or its nominee, of new subways to be constructed by the city of New York, in conjunction with certain other lines of railway owned or controlled by that company, on terms set forth in that resolution; and (2) to restrain the performance of the four contracts between the city of New York and the Bradley Construction Company for the construction of four sections of subway on the so-called Lexington Avenue route, said contracts likewise purporting to have been authorized by the board of estimate and apportionment by resolutions adopted on July 21, 1911.

The sole theory on which this action is based is that the several agreements which are sought to be restrained and nullified, and the acts of the public officers by whom they are claimed to have been sanctioned, are illegal, for the reasons that will presently be discussed. There is no accusation that any defendant has been guilty of fraud or bad faith. The two matters sought to be restrained by injunction are entirely independent of each other. The Bradley contracts are only for the construction of subways to be used for the purposes of a rapid transit railroad. The other contract, when made, will be for the operation of a railroad in the subways thus to be constructed. It is conceded that it is entirely legal and competent for the public authorities to separately contract for construction and operation, and no complaint is made on that score.

[1] As to the proposed contract for operation: The action proceeds upon the theory that the terms of the contract for operation have been finally determined upon, and that nothing remains but to prepare and execute a contract. It appears from the papers before us that early in the present year the general subject of a contract for a new rapid transit route or routes was taken up and considered by a joint committee, consisting of the members of the public service commission and certain members of the board of estimate and apportionment. This joint committee invited and received in-

formal proposals from two companies already operating lines in the city of New York, to wit, the Interborough Rapid Transit Company and the Brooklyn Rapid Transit Company. After consideration, the joint committee made a report favoring the execution of an operating contract upon terms satisfactory to the Brooklyn Company, and which could apparently be carried out only by that company. It is a contract to be made as recommended by this joint committee that it is now sought to enjoin.

The learned counsel for the plaintiff has argued before us with much force and earnestness that such a contract would be illegal (1) because it would violate section 10 of article 8 of the Constitution of this state, which forbids any county, city, town, or village to give money or property, or loan its money or credit, to or in aid of any individual, association, or corporation; and (2) that it is ultra vires of the city of New York, because no one could bid for the contract except the Brooklyn Rapid Transit Company, and hence that there can be no competition for the right to operate the railroad. The contract foreshadowed by the joint committee is in many respects an unusual and extraordinary one, doubtless because the problem to be solved was itself unusual and extraordinary; but we do not find it necessary at this time to consider or discuss the objections to it which are urged by plaintiff, and expressly forbear to pass upon them, because their discussion and consideration at this time would be premature and academic. For this reason the learned counsel for the respondents has wisely and properly declined to undertake at the present time to enter upon a defense of either the legality or constitutionality of the proposed contract.

The act under which rapid transit railroads must be constructed requires that many preliminaries shall be observed before any contract for operation can become operative, in the course of which any proposed contract must withstand the scrutiny and obtain the approval of the counsel to the public service commission and the corporation counsel, neither of whom would be likely to approve a manifestly illegal and unconstitutional contract. It must also be subjected to a public hearing, and must meet the approval both of the public service commission and of the board of estimate and apportionment. No one of these steps has yet been taken. The joint committee, whose report has aroused the apprehensions of the plaintiff, was, as has been aptly described by counsel, an extrastatutory or nonstatutory body, and its report, although accepted and approved by the public service commission and the board of estimate and apportionment, is really binding upon neither, and both are still free, as a matter of law, to propose and approve any contract which may commend itself to their respective judgments, however widely it may depart from the recommendations of the joint committee. There is, therefore, no such imminence of the execution of a contract as would justify a temporary injunction to prevent its execution, or even an examination of its legality.

[2] As to the contract for construction: That portion of the proposed subway system which is to occupy Lexington avenue was divided into 16 sections, for all of which bids were invited and received. These

bids were made upon what is known as the "unit basis"; that is to say, instead of bidding a single price for the work as a whole, the classes of work were divided and subdivided into a great number of units, for each of which a separate bid was made. These bids were based upon construction contracts exhibited to the bidders, which embraced (a) the contract proper, setting forth the agreement between the parties; (b) the specifications, setting forth the way in which the work was to be done and the nature of the materials to be used; and (c) the plans or contract drawings. Four of these contracts have been let to the Bradley Construction Company and are now in the course of execution. It is these that plaintiff seeks to enjoin. It is not necessary to dwell at length on all the grounds upon which an injunction is sought, for none of them are in our opinion sufficient to justify the issuance of an injunction pendente lite and the halting of the work until a trial can be had.

One of the objections is that, after the advertisement for bids and before the letting of the contracts to the defendant Bradley Construction Company, the public service commission decided that it would thereafter alter the plans by slightly modifying the size of the conduit. Hence, as it is claimed, the committee let a different contract from that for which it had invited bids. Both the act under which the commission proceeded and the contract which it offered to bidders contemplated and provided for possible modification of the plans and specifications, and the modifications upon which the commission have now determined are clearly such as might lawfully have been determined upon and made after execution. In point of fact, the contracts have been executed exactly as submitted to bidders, and the contemplated changes in the plans are yet to be made. Whether or not these changes are of such a character as would probably induce a change in the unit prices bidden by contractors was a matter for the commission to determine. As to the greater number of the sections of the Lexington Avenue route, it has concluded that the projected changes may make a difference, and has determined to readvertise. As to the four contracts now under consideration, it has concluded that the changes would make no difference. It is not our duty to review the exercise of its discretion in this regard.

[3] Concerning the objection that the construction contracts required the separate and independent approval of the mayor, we are of opinion that contracts for construction only do not require to be thus approved. See sections 74 and 242, Greater New York Charter, as amended by Laws 1905, c. 629; section 74 of said charter, as amended by Laws 1905, c. 630; section 5 of the rapid transit act, as amended by Laws 1905, c. 631. The making of a contract by the city of New York merely for the construction of a subway, sewer, or other subsurface structure, which is to be and remain the property of the city, does not grant to the contractor a franchise or right to use the street, within the meaning of the statutory provisions requiring in certain cases the separate and independent approval of the mayor. Whether such approval would be requisite to a contract for operation is a dif-

ferent question, which is not presented on this appeal, and which we do not consider.

The defendant Bradley Construction Company objects that the city of New York, which is a contracting party with it, is not·a party to the action, and urges with much force that no action should be taken, holding the contracts to be invalid, unless both parties to the contract are before the court, so that both shall be bound by the judgment or order to be entered. This objection is not without weight. but the conclusion at which we have arrived renders it unnecessary to pass upon it at this time.

The order appealed from is affirmed, with $10 costs and disbursements. All concur.