HOLBROOK, CABOT & ROLLINS CORPORATION v. CITY OF NEW YORK.

(District Court, S. D. New York.   July 16, 1921.)

1. Municipal corporations ⬅868(1)—Supplemental contract increasing compensation void unless board had prescribed amount of bonds or had available funds.

Under Rapid Transit Act N. Y. § 37, subd. 2, providing that the amount of bonds authorized to be issued and sold thereunder should not exceed the limit prescribed by the board of estimate and apportionment, and no contract should be made until such board should have consented thereto and prescribed a limit to the amount of bonds available for the purposes of that section sufficient to meet the requirements of the contract in addition to prior obligations, the modification of a contract for construction of a rapid transit railway to provide for increased compensation to the contractor was void unless the board had prescribed bonds or had available funds to meet the expenditures involved therein, and such fact should have been pleaded in an action to recover on the modified contract.

2. Statutes ⬅219—Executive interpretation usually limited to formal rulings.

While departmental interpretations of statutes are evidence of their construction to which the court should give weight, this is chiefly applied to formal rulings, and not to cases where claims in process of adjustment have been recognized in spite of possible question as to their validity.

3. Municipal corporations ⬅354—Statute held not to authorize supplemental contract for completion of rapid transit contract.

Laws N. Y. 1918, c. 586, § 10, authorizing the Public Service Commission (acting under the Rapid Transit Act as the agent of the city of New York) to release contractors from the terms and conditions of their contracts when, by reason of conditions arising from the war, the prosecution of the work is in conflict with public interest or necessity, applies only to a suspension of the work in whole or in part, and does not author-

ize a supplemental contract for additional compensation to the contractor to insure completion of the original contract.

**4. Municipal corporations ⊙➾354—Refusal to cancel contracts because of war conditions as authorized by statute held so far discretionary as to give no right of action.**

Under Laws N. Y. 1918, c. 586, §§ 3, 4, and 5, authorizing the Public Service Commission (as agent of the city of New York under the Rapid Transit Act) to cancel construction contracts because of war conditions, and to require a settlement of all claims for damages by the contractor as a condition of cancellation, the cancellation of the contract is such a matter of discretion that no right of action can be predicated on failure to exercise such discretion, though in reliance on the promise of the Commission and the board of estimate and apportionment that the contract, so far as necessary, would be placed under the operation of such law, the contractor has paid more than the prevailing rate of wages.

**5. Municipal corporations ⊙➾354—Emergency held not to justify disregard of statute in promising contractors additional compensation.**

The loss to the city of New York from the noncompletion of contracts for the construction of subways, and the inconvenience to the public from partly constructed subways, did not justify a disregard of statutory provisions in modifying the construction contracts to provide additional compensation to the contractors because of war conditions.

**6. Evidence ⊙➾29—Judicial notice taken of state laws.**

The court takes judicial notice of the terms of laws of the state.

**7. Pleading ⊙➾63—Not necessary to negative proviso of law.**

Under the Lusk Amendment to Laws N. Y. 1918, c. 585, declaring the cost of completing public contracts at an increased cost because of the war, in reliance on any promise of relief by local authorities, a valid obligation of the municipality, provided the contracts shall not have been canceled under the original act or an application for a cancellation denied, it is not necessary for a contractor to plead that the contract was not canceled or an application for cancellation made and denied; the provision as to cancellation being set forth in a proviso and constituting a defense.

**8. Municipal corporations ⊙➾871—Statute making increased cost of public contract valid municipal obligation not invalid as gift.**

The Lusk Amendment to Laws N. Y. 1918, c. 585, declaring the cost of completing municipal contracts at an increased cost owing to the war, in reliance on any promise of relief by local authorities, a valid obligation of the municipality, does not violate Const. N. Y. art. 8, § 10, prohibiting cities, etc., from giving any money or property to or in aid of any individual, association, or corporation, as this does not apply to the enforcement of an ultra vires obligation of public authorities which the Legislature might have originally authorized.

**9. Municipal corporations ⊙➾327—Statute relative to increased cost of public contracts not invalid if agreements supported by consideration.**

The Lusk Amendment to Laws N. Y. 1918, c. 585, relative to the payment by municipalities of the increased cost of completing contracts because of the war, does not violate Const. N. Y. art. 3, § 28, prohibiting extra consideration to any contractor or officer, as applied to an agreement by municipal authorities to pay the increased cost if such agreement was founded upon a substantial consideration.

**10. Municipal corporations ⊙➾354—Statute relative to increased cost of completing contract owing to war refers only to increases due to the entry of the United States into the war.**

The Lusk Amendment to Laws N. Y. 1918, c. 585, relative to payment for the construction of public utilities completed at an increased cost owing to the war with Germany, refers to the participation of this coun-

⊙➾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes·

try in the war with the German Empire and not to the European war in general, and embraces only such increases as arose from the entry of the United States into the war.

**11. Municipal corporations** ⊜=374(3)—**Complaint held to allege a sufficient consideration for city's agreement to pay increased cost of subway construction due to war.**

In an action on a contract with a city for the construction of a section of a subway, a complaint alleging the payment of increases demanded by workmen in reliance on the city's promise to reimburse the contractors for increases in the cost of labor and materials due to the war *held* to plead a sufficient consideration to withstand demurrer.

At Law. Action by the Holbrook, Cabot & Rollins Corporation against the City of New York. On demurrer to the seventh, eighth, and ninth causes of action. Demurrer overruled.

See, also, 277 Fed. 853.

The action was brought to recover amounts alleged to be due on a contract and supplemental contracts for the construction of a section of the Broadway-Fourth Avenue Rapid Transit Railroad in the city of New York, and for damages for alleged breaches of the contract.

The seventh cause of action alleged numerous demands by workmen employed by plaintiffs and other contractors for increased wages, and that the contractors granted such increases at the request and direction of the Public Service Commission; that with respect to an increase to take effect April 1, 1917, the Commission and its chairman assured plaintiff and the other contractors that a way would be found for defendant to assume and pay the amount of such increases and further increases in the cost of labor and materials anticipated because of the war then imminent; that the Commission would endeavor to procure necessary legislative authority; that following the declaration of war the cost of labor and materials was greatly increased and the efficiency of labor greatly diminished; that in or prior to May, 1918, a further large increase in wages was demanded, and plaintiff and the other contractors refused to meet such demand unless defendant would agree to reimburse them for such increase in wages and the cost of materials and enter into an enforceable agreement therefor; that the Commission and the board of estimate and apportionment, acting for defendant, promised and agreed that, if plaintiff would waive the agreements with their workmen and pay the increase demanded, defendant would pay plaintiff and the other contractors such increase and the increased cost of materials and any further increase, etc.; that plaintiff and the other contractors accepted such agreement and paid the demanded increase, but defendant failed and refused to carry out its agreement, and plaintiff and the other contractors gave notice that they would not pay such increased wages unless an enforceable and binding agreement was made as previously stated and provided, or, to put into operation and give the contractors the benefit of the Lockwood Law (Laws 1918, c. 586); that plaintiff's workmen struck and suspended all work; that thereafter the board of estimate and apportionment and the Commission promised and agreed to reimburse the contractors for increases in labor and materials, and, in so far as necessary, to place the contracts under the operation of the Lockwood Law; that the Commission and the board further agreed to adjust, settle, and pay existing claims for damages for breaches of contract; that the contractors accepted such promises, assurances, and agreements, and agreed to and did pay the increased wage scale, but that notwithstanding the full performance by the contractors, defendant had failed to pay such claims and increases, and failed, neglected, and refused to place the Lockwood Law in operation. It also contained allegations claimed to show that the completion of the work under the contracts was essential, if not imperative, to relieve congested conditions and inconveniences to the public.

⊜=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The eighth cause of action alleged a supplemental agreement by the city for a good and valuable consideration to reimburse and pay plaintiff the amounts of all damages caused plaintiff by defendant's breaches of contract, and to include therein the increased cost of the work.

The ninth cause of action alleged a supplemental agreement for a good and valuable consideration whereby the city agreed to reimburse and pay plaintiff the amounts of increases in wages and cost of materials, in addition to payment in accordance with the unit prices fixed in the contract.

Thomas F. Conway, of New York City, for plaintiff.

John P. O'Brien, Corp. Counsel, Clarence J. Shearn, John F. Collins, and Charles C. Smith, all of New York City, for defendant.

AUGUSTUS N. HAND, District Judge. [1] I can find little in plaintiff's reargument, outside of the so-called Lusk Amendment (Laws 1921, c. 711), which I have not already considered to the best of my ability. A few new decisions are referred to, but they fall within the general principles heretofore discussed. The case of Admiral Realty Co. v. Gaynor, 147 App. Div. 720, 132 N. Y. Supp. 220, does not obviate the necessity of compliance with subdivision 2, § 37, of the Rapid Transit Act (Laws 1891, c. 4, as amended by Laws 1909, c. 498, § 17). There Justice Scott, in referring to changes in plans and specifications in the size of the conduit which affected the cost of same, held that such modifications might be made by the Public Service Commission both by the act and by the terms of the contract as let. That sort of change was, for the reasons I have heretofore stated, different from a change in the rate of compensation. It was in its nature an engineering problem under the control of the Commission which did not fall within the provisions of section 37, supra.

The case of People ex rel. Holbrook v. Mitchell, New York Law Journal, August 24, 1915, is also no authority for holding that the board of estimate and apportionment was not required to prescribe the bonds to be issued for a supplemental contract changing the rate of compensation. That case was discussed in plaintiff's original brief. A condition requiring a lump sum payment for extra work instead of an alternative provision for cost plus ten per cent., or a lump sum as prescribed in article 12 of the general form of city subway contracts, was sought to be inserted by the board of estimate and apportionment in its consent to a contract which had been awarded by the Commission to a successful bidder. This was held to vary the contract which had been advertised and to involve a risk to the contractors which they ought not to be compelled to take. The court decided only that the board of estimate had attached to its consent an illegal condition which interfered with a proposal to bidders lawfully advertised by the Commission and awarded to a successful contractor. It was said in the course of the opinion that—

"There is substantial ground for holding that the board had no discretion in the matter at all as the authorization of the expenditures was made when the general plans were approved at the time the dual contract was decided upon."

These remarks were a dictum; but even if subject to no valid criticism because contemplating only a general prescription of bonds for

the route, rather than a prescription for the special contract, they are inapplicable to this case because it has nowhere been pleaded that the board of estimate and apportionment had prescribed a limit of bonds available for the amended or supplemental contract upon which recovery is here sought. The provision for extra work in the Degnon contract, referred to on page 32 of plaintiff's brief, is not in point, for the cost plus clause there in issue was one of the terms of the contract which like any other provision for compensation for extra work while it might affect considerably the cost of the contract was something which might reasonably be roughly taken into consideration by the board of estimate and apportionment and was quite different from a different rate of payment for the contractor on the entire contract.

The case of McGovern v. City of New York was strongly relied upon in the original brief, and was one of the principal cases in the New York courts which I considered. The changes there came within the terms of the contract and did not involve modifications of the rate of compensation of the most fundamental sort.

The case of Bradley Contracting Co. v. City of New York, also referred to by plaintiff's counsel, is an unreported decision, and the work apparently related to restoration of a street affected by subway construction. Exactly what was the theory of recovery has not been made clear, but it is asserted that the recovery allowed for this item was a small part of the total claim, and that the matter was settled and an appeal taken by the city from the judgment was withdrawn. The case as a precedent is too inapplicable for serious consideration.

The recent decision of Justice Finch in the case of Moore v. City of New York, reported in New York Law Journal December 2, 1919, and affirmed at 192 App. Div. 902, 182 N. Y. Supp. 938, where a consent and provision for payment of work under a subway contract by the board of estimate and apportionment was held to be a condition of validity, seems to bear out the city's contention.

The cases of Meech v. City of Buffalo, 29 N. Y. 198, Moore v. Mayor, 73 N. Y. 238, 29 Am. Rep. 134, Van Dolsen v. Board of Education, 162 N. Y. 446, 56 N. E. 990, and the well-known decision of Hitchcock v. Galveston, 96 U. S. 341, 24 L. Ed. 659, were all urged on the original argument. They differ from the present case because here there is a lack of power on the part of the Commission to make a contract which shall bind the city unless the board of estimate and apportionment, which has control of the finances of the city, has taken the necessary steps. I think this limitation of power extends to a modification involving such a fundamental change of cost as the present, not provided for in the original contract. The situation may be different where the same official or board has the power both to make the contract and to appropriate the funds. In the latter case, the failure to comply with statutory regulations which ought to be observed has sometimes been regarded as only an irregularity. Under familiar decisions an ultra vires act of a private corporation is treated quite differently from that of a municipal corporation where the whole power to act rests upon a special statute. Edison Electric Co. v. City, 178 Fed. 425, 102 C. C. A. 401.

It is said that section 37 of the Rapid Transit Act does not specifically require bonds to be prescribed for the particular contract or amended contract, but only requires the board of estimate and apportionment to prescribe a limit to the amount of bonds "available for the purposes of this section which shall be sufficient to meet the requirements of such contract in addition to all obligations theretofore incurred and to be satisfied from such bonds." In other words, it is contended that sufficient bonds were made available when the dual subway contract was decided upon and the discretion of the board in refusing any available funds after it had consented to the amendment was exhausted. If this contention be sound, the plaintiff should not rely upon arguments based upon the financial transactions of the board, but should plead that the board of estimate and apportionment had prescribed bonds, or had available funds to meet the expenditures involved in the amended or supplemental contract which it had consented to.

The recent case in the New York Supreme Court, Appellate Division, of People ex rel. Connors v. Board of Education, 197 App. Div. 5, 188 N. Y. Supp. 686, which held that a general appropriation for the construction of school buildings satisfied the charter provisions that no expense should be incurred by a city department unless a previous appropriation had been made and was sufficient to render a contract valid though no express appropriation had been made for the particular contract, is not in point. It is not here pleaded that the board of estimate had "prescribed a limit to the amount of bonds available" which were sufficient to meet the requirements of the amended contract in addition to all obligations theretofore incurred and to be satisfied from such bonds.

[2] I may add at this point that no practical construction of contracts can be valid which does not meet the requirements of the Rapid Transit Act. It is true that departmental interpretations of statutes are evidence of their proper construction to which courts should give weight, but this doctrine is chiefly applied to formal rulings and not to cases where claims in process of adjustment have been recognized in spite of possible question as to their validity.

The point is made that the plaintiff need not plead that bonds or funds are available for extra cost, but if my conclusion is correct, there can be no valid contract by reason of the provisions of the Rapid Transit Act unless such funds have been made available. It would hardly be contended that a mere allegation that the city duly entered into a contract to build a section of the subway would be a sufficient allegation to sustain recovery. If it would not be, such a vital condition of a contract that is itself made a part of the complaint by reference required by a statute that is referred to must be pleaded. Indeed, the plaintiff has carefully thus pleaded as to the original contract.

The difficulty with the argument is that without prescription of bonds or available funds which were a condition precedent to the making of the supplemental contract, it was not good on its face. In the case of McNulty v. City of New York, 168 N. Y. 117, 61 N. E. 111, relied upon by the plaintiff, the contract was good on its face. The highway cases cited in the McNulty decision were similar. The statute did not so much prescribe what should be done before any contract could be

entered into as barred recovery if there were not sufficient funds available. As I understand it, the claim in the McNulty Case was not that there had never been an appropriation but that it had become exhausted. The closest case on pleading which I have discovered are McBean, v. San Bernardino, 96 Cal. 183, 31 Pac. 49; City of Waco v. McNeill (Tex. Civ. App.) 29 S. W. 1109.

In the present case we have a statute authorizing extra municipal work to be entered upon under prescribed conditions. All conditions vitally affecting the city must be complied with to give rise to a valid contract and, especially where, as in this case, they are expressly made conditions precedent, must be pleaded.

In respect to the Lockwood Law (Laws 1918, c. 586), it is alleged that the board of estimate and apportionment agreed with plaintiff, and other contractors:

"That if and in so far. as it was or might become necessary to enable defendant to carry out and perform said agreement on its part" (to pay increased cost due to war conditions) "said board and said Commission would cancel and place said contracts under the operation of said Lockwood Law, so that plaintiff and said other contractors respectively would in such event have the full benefit of the relief it contemplated and provided for, and said increased costs of labor and material adjusted, settled and paid in the manner it provided or authorized and that pending the examination or investigation hereinafter referred to, to enable said board and said Commission to decide which, if any, of said contracts it would be necessary to place under the operation of said law in order to carry out said arrangement, said increase in said scale of wages would be paid to plaintiff and said other contractors, respectively. * * * "

It is further alleged that to decide which, if any, of said contracts should be placed under the Lockwood Law, the contractors were to permit the examination by defendant of their books and records. It is further alleged that all legal claims for breaches of contract by defendant prior to June 15, 1918, when such agreement was made, would be deemed included in the increased cost; that detailed statements thereof were furnished by the plaintiff to the defendant at the latter's request; and that any and all further damages arising from breaches of contract then accrued would be deemed paid by the payment from and after that date of the increased cost of labor and materials.

The complaint further alleges that the defendant refused to pay the increased cost of labor and materials and the amount of past damages as agreed, and neglected and refused to place in operation said Lockwood Law.

It is manifest that the Lockwood Law does not apply, for it is expressly alleged that the public authorities refused to place it in operation. The operation of this law contemplates a cancellation of existing contracts in all cases except (1) where an event or default specified in the contract has occurred whereby the Commission has the right to take over and complete the contract (section 2 of chapter 586 of Laws of 1918), and (2) where the work is suspended in whole or in part by the Commission with the consent of the contractor (section 10 of chapter 586, supra).

[3] Section 10 is clearly not applicable, and the provision in subdivision 2 thereof authorizing the Commission to "release a contractor

* * * from the terms and conditions of his contract subject to such conditions as may be reasonably imposed" cannot possibly cover this case. Section 10 is entitled in the statute: "Suspension of Whole or Part of Work." It evidently was inserted to provide for a situation where the provisions of prior sections of the Lockwood Act relating to cancellation of contracts and completion of the subway work were not sufficient to cover all anticipated war emergencies, and the things which section 10 says the Commission may do are conditioned upon the decision by the Commission:

"That the prosecution of the work called for * * * has, by reason of conditions arising from * * * a state of war become in conflict with public interest or necessity."

In other words, the section applies, as its title indicates, to "suspension of whole or part of work."

It seems quite impossible that authorization for a supplemental contract made in order to insure the completion of the original contract can be found in language relating to suspension of prosecution of work.

[4] In respect to cancellation under sections 3, 4, and 5 of the Lockwood Act, it is to be noted that the last section specifically enables the Commission to require a settlement of all the contractors' claims for damages as a condition of cancellation.

The mode of cancellation is carefully prescribed. It is apparent from the complaint that the parties were putting themselves in position to cancel the contract. It is evident that the examination of plaintiff's books, and scrutiny of its claims by the Comptroller, had this in view. It may be that the inability to reach an adjustment of these claims which under the Lockwood Act might be required "as a condition of * * * cancellation and annulment" of the contract was what prevented further progress, but the fact remains, and is alleged, that the authorities "refused to place in operation such Lockwood Law," and no cause of action can be predicated upon failure to exercise a statutory discretion.

The plaintiff claims the statutory discretion was exhausted because of an estoppel arising out of the performance by it of its part of the alleged agreement to pay more than the prevailing rate of wages on the faith of a promise by the board and the Commission that, so far as it might become necessary to enable defendant to carry out the agreement on its part to pay the increased cost, they "would cancel and place said contracts under the operation of said Lockwood Law so that plaintiff * * * would * * * have the full benefit of the relief it contemplated and provided for. . * * * "

In this case the agreement was to adjust and pay past damages and future extra cost. If the Lockwood Law had enabled the Commission to fix the past damages of the contractor as a quasi judicial function, it might have been possible to contend that a right existed to compel them by mandamus to proceed under the act to fix the damages and pay the increased cost, and if the plaintiff went on doing work on the faith of the alleged promise, it might have been reasonable likewise to contend that a right of recovery in quasi contract for unjust enrichment was made out; but an important provision preliminary to the

operation of the law, which the authorities could by its terms invoke, was a satisfactory adjustment of the claims for past damages. This left the cancellation of the contract a matter so entirely discretionary that no case is established. The complete failure of all parties to observe the provisions of the statute regulating procedure might render recovery, even under different circumstances, difficult to justify.

[5] The argument that the allegations in the seventh cause of action justify a recovery under the doctrine of emergency has been repeated and amplified. I cannot be persuaded that the loss to the city and the public inconvenience of half-built subways would justify a disregard of existing statutory provisions. There were apparently lawful ways by which the city might modify its contracts or make new contracts, and the law of emergency can only be invoked where regular modes of procedure cannot reasonably be complied with. Dillon on Municipal Corporations, § 802. Is it reasonable to say that no time was available to take the requisite steps and comply with the law, and that the case was like that of the sudden suspension of a lighting system in a large city? While the situation may have justified emergency legislation under the police power, it is quite a different thing to hold that it would permit the authorities to proceed in disregard of existing statutes.

The eighth and ninth causes of action are subject to the same defects of pleading as the seventh, because they each contain by reference to paragraphs I to XII of the first cause of action a recital of a contract made under the provisions of the Rapid Transit Act, and seek recovery for the breach of a "supplemental agreement modifying and supplementing the provisions of * * * said contract." Each cause of action was among other things to recover an item for increased cost of construction of subways subsequent to June 15, 1918. If I am right in my previous conclusions, a valid supplemental agreement to pay such increased cost involved the consent of the board of estimate and apportionment to the amendment and adequate financial provision in order to meet the expense. These facts have not been pleaded in the case of either the eighth or ninth causes of action, which are therefore demurrable for the reasons applicable to the seventh cause of action.

The doubtful point in this case, to which I have given great consideration, is the power of the Commission to modify the contract without action by the board of estimate under section 37. The plaintiff argues that the power of the Commission to amend is practically unlimited, and it certainly is if such a vital change as the one here can be sustained. I do not believe that the Rapid Transit Act, so carefully drawn to prevent the city from becoming involved in too heavy expenditures, when embarking upon a somewhat hazardous and extra municipal undertaking, can have intended to leave to the Commission, under the guise of a power to modify, the right to require for the original work increased payment to the contractor so large as to give rise practically to a new contract. If the board of estimate and apportionment, having consented to the alleged contract to pay the contractor the large additional sums, withdrew a sufficient amount of bonds theretofore from the debt limit so that these bonds together with funds otherwise available would meet the requirements of the modified contract "in addition

to all obligations theretofore incurred and to be satisfied from such bonds" (see section 37 of the Rapid Transit Act), the plaintiff should plead these facts. It may also be that so fundamental a change in the contract would require a public hearing under section 37, subd. 2, of the Rapid Transit Act, for the reason that it was too broad a change to amount to a modification within the meaning of section 38 and was substantially a new and different contract.

The New York Court of Appeals, in the case of National Contracting Co. v. Hudson River Water Power Co., 192 N. Y. 209, 84 N. E. 965, held that very substantial changes in the amount of stone masonry in a contract for the construction of a dam across the Hudson river could not be required of the contractor by reason of a provision in the contract that the water power company might "make alterations in the line, grade, plans, form, position, dimensions or material of the work to be performed," and that "if such alterations diminish the quantity of the work to be done they shall not constitute a claim for damages or for anticipated profits on the work that may be dispensed with." They further held that the refusal of the contractor to proceed when such changes were demanded was not a breach of the contract on its part, and that the requirement of the water company that the contractor proceed in accordance with the amended plans was an unjustifiable breach on its part.

After carefully reconsidering the case, I am still of the opinion that the plaintiff has not by its pleading brought causes of action 7, 8, or 9 within the provision of the Rapid Transit Act or of the Lockwood Law, and has not stated grounds justifying recovery under any theory of unjust enrichment or estoppel which can prevail against a municipal corporation engaged in constructing a railroad under the terms of the Rapid Transit Act. But while at common law and under the provisions of the Rapid Transit Act the plaintiff has not pleaded facts entitling it to relief in the seventh, eighth, or ninth causes of action, the so-called Lusk Amendment (Laws 1921, c. 711) to the Walters Act, chapter 585 of the Laws of 1918, passed since the argument of this motion, affords it some relief. That amendment provides that in respect to contracts for construction of public utilities made prior to April 6, 1917, and completed at an increased cost owing to a state of war with Germany in reliance upon any promise of action for relief from such increased cost given by the local authorities, board, or commission of any municipality with or for which said contract was made, any damage, loss, or expense which a court of competent jurisdiction may find to have been occasioned by increased cost in the performance due to the existence of a state of war not to exceed the actual and necessary cost of the performance thereunder subsequent to April 6, 1917, is made a valid obligation of the municipality, provided, however, that said contract shall not have been heretofore canceled or annulled under the act or an application for the cancellation or annulment thereof under the act shall not prior to January 1, 1920, have been denied. The amendment also provides:

"Any court of competent jurisdiction may, in any action or proceeding now pending, * * * hear, try and determine any such claims, and, if it finds

277 F.—54

that such damages shall have been sustained, may award and render judgment for such sum as may be just and equitable."

[6] The only application for cancellation which the act contemplates is by the city. The case falls within the act unless it is necessary for the plaintiff to plead that the contract has not been canceled or annulled under the act, or that an application for cancellation or annulment shall not have been denied. The suggestion of counsel for defendant that the Lusk Amendment, supra, ought to be pleaded, is not sound. This court takes judicial notice of its terms. Long Island R. R. Co. v. City, 199 N. Y. 288, at page 303, 92 N. E. 681.

[7] That the contract was not canceled is quite plain from the elaborate recital of the facts in the seventh cause of action of the complaint. It seems also apparent that no application to cancel it under the Walters Act has been made and denied. The only one who could have made such an application "under this act" was the city, and the only one who could have denied it "under this act" was the contractor by refusing to file the statutory stipulation and give its consent after notice by the city that the latter desired cancellation. But in any event, it would be unnecessary to plead that the contract was not canceled or that an application for cancellation under the Walters Act was not made and denied. Such cancellation or application therefor, which would take the case out of the Lusk Amendment, are set forth in a proviso and would, under settled authority, have to be pleaded as a defense. Rowell v. Janvrin, 151 N. Y. 60, 45 N. E. 398; People v. Briggs, 114 N. Y. 56, 20 N. E. 820; People v. Kibler, 106 N. Y. 32, 12 N. E. 795; Teel v. Fonda, 4 Johns. (N. Y.) 304; Steel v. Smith, 1 Barn. & Ald. 94.

[8] It has been suggested that the Lusk Amendment is unconstitutional under article 8, § 10, of the New York State Constitution. That section provides, among other things, that—

"No county, city, town or village shall hereafter give any money or property * * * * to or in aid of any individual, association or corporation. * * * *"

The section does not apply to an act which permits the enforcement of an obligation which is due to the fact that it arose from ultra vires action on the part of the public authorities. If it is something which the Legislature might have authorized originally, there is no constitutional objection to a curative act which in effect ratifies an unauthorized municipal contract.

If therefore the plaintiff can prove the facts alleged in the seventh, eighth, or ninth causes of action, while the provisions of the Rapid Transit Act would not seem to have been complied with so as to enable it to recover prior to the passage of the Lusk Amendment, I think that amendment creates quite a different situation, and the causes of action are now good on their face. Matter of Greene, 166 N. Y. at page 494, 60 N. E. 183; People ex rel. Central Trust Co. v. Prendergast, 202 N. Y. at pages 198, 199, 95 N. E. 715; Matter of Borup, 182 N. Y. 226, 74 N. E. 838, 108 Am. St. Rep. 796. As Judge Landon said in Matter of Greene, supra, 166 N. Y. at page 494, 60 N. E. 186:

"The Legislature may ratify what it might originally have authorized, and it seems to be right that it should have the power to relieve against the

special injustice which may sometimes result from the limitations it has imposed upon the authority of the officers which it has empowered with the administration of its municipal creations."

See, also, W. I. B. Co. v. Town of Attica, 119 N. Y. 204, 23 N. E. 542; First Construction Co. v. State of New York, 221 N. Y. 295, 116 N. E. 1020.

[9] Article 3, § 28, of the New York State Constitution, provides that—

"The Legislature shall not, nor shall the common council of any city, nor any board of supervisors, grant any extra compensation to any public officer, servant, agent or contractor."

This provision stands in much the same position as section 10 of article 8, above discussed. The question is whether there was any substantial consideration for the agreement to pay increased cost of labor and materials.

[10] The relief granted by the Lusk Amendment is limited to increased cost resulting from or due to the existence of a state of war. It is manifest that this cannot embrace all increases from April 6, 1917, which were over and above the rates prevailing at the date when the original contract was made, but only such increases as arose from the entry of the United States into the war. I think it clear that the words "existence of a state of war" refer to participation of this country in war with the German Empire, and not to the European war in general, which began in August, 1914, more than one year before the contract sued upon was made. If the plaintiff can establish an agreement to pay the increased cost due to the existence of a state of war, and can prove at the trial that the agreement was founded upon a substantial consideration, such increased cost will not be "extra compensation" or a gift within the proscription of the New York Constitution, and the plaintiff can recover that amount under the terms of the Lusk Amendment. The applicability of the curative act will depend upon proof at the trial of a substantial consideration sufficient to take the case out of the constitutional provisions.

[11] As I said in my original opinion, a sufficient consideration has been pleaded to withstand the demurrer. Whether the promises to pay increased cost involved rates of wages that were more than then prevailed or were given in exchange for extinguishment of substantial claims for damages, are matters to be developed at the trial. I do not think the Lusk Amendment is unconstitutional on its face or as applied to the facts pleaded. The promise therein referred to would seem to be a promise for a valid consideration; otherwise the constitutional provisions would appear to stand in the way. If the amendment is thus construed, I can see nothing against it. O'Hara v. State, 112 N. Y. 146, 19 N. E. 659, 2 L. R. A. 603, 8 Am. St. Rep. 726; Lehigh Valley R. R. v. Canal Board, 204 N. Y. 471, 97 N. E. 964, Ann. Cas. 1913C, 1228.

Accordingly, the demurrer to the seventh, eighth, and ninth causes of action is overruled.